COMMONWEALTH vs. MICHAEL GUILFOYLE.

Suffolk.   December 7, 1987. — April 11, 1988.

Present: WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Civil Rights,* Injunctive relief. *Injunction. Jurisdiction,* Juvenile. *Constitutional Law,* Jury. *Practice, Civil,* Presumptions and burden of proof.

The provisions of the Massachusetts Civil Rights Act, G. L. c. 12, § 11H, are applicable to juveniles, and the Attorney General may bring civil actions against them for injunctive or other equitable relief. [133-135]

In an action brought by the Attorney General under the Massachusetts Civil Rights Act, G. L. c. 12, § 11H, an injunction ordering the defendant to refrain from certain activities was, in the circumstances, reasonable in scope and duration. [135]

In an action seeking equitable relief pursuant to the provisions of the Massachusetts Civil Rights Act, G. L. c. 12, § 11H, there is no right to a trial by jury. [135-136]

In an action brought by the Attorney General seeking injunctive relief under G. L. c. 12, § 11H, against a defendant for his violation of the civil rights of certain persons, the judge appropriately applied the "preponderance of the evidence" standard of proof in determining whether to grant an injunction. [136]

CIVIL ACTION commenced in the Superior Court Department on August 13, 1986.

The case was heard by *Haskell C. Freedman,* J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert Emmet Dinsmore* for the defendant.

*Harry Yee,* Assistant District Attorney (*Virginia N. Lee,* Assistant Attorney General, with him) for the Commonwealth.

LIACOS, J. In August, 1986, the Attorney General filed a complaint on behalf of the Commonwealth against three juveniles, the appellant, Michael Guilfoyle, and his friends, Mark Wahlberg and Derek Furkart. The complaint alleged that

the juveniles had violated the Massachusetts Civil Rights Act (Act), G. L. c. 12, § 11H,[1] and sought injunctive relief, pursuant to G. L. c. 12, § 11J.[2] The judge appointed Guilfoyle's mother as his guardian ad litem. Mass. R. Civ. P. 17 (b), 365 Mass. 763 (1974). After a hearing, Guilfoyle was found to have violated the Act, and a permanent injunction was entered. He appealed, and we transferred the case to this court on our own motion.[3]

The judge made the following findings which the parties do not dispute. On June 15, 1986, twelve year old Shamele Jesse Coleman (Jesse Coleman) and his brother and sister, who are black, were walking home from Savin Hill Beach through Savin Hill, an almost exclusively white section of Dorchester. As they were walking, they were met by Guilfoyle and other

---

[1] General Laws c. 12, § 11H (1986 ed.): "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business."

[2] General Laws c. 12, § 11J (1986 ed.), provides in part: "In actions brought pursuant to section eleven H or eleven I, whenever the court issues a temporary restraining order or a preliminary or permanent injunction, ordering a defendant to refrain from certain conduct or activities, the order issued shall contain the following statement: VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE.

"After any such order has been served upon the defendant, any violation of such order shall be punishable by a fine of not more than five thousand dollars or by imprisonment for not more than two and one-half years in a house of correction, or both such fine and imprisonment; provided, however, that if bodily injury results from such violation, the violation shall be punishable by a fine of not more than ten thousand dollars or by imprisonment for not more than ten years, or both. . . . Whenever any law enforcement officer has probable cause to believe that such defendant has violated the provisions of this section, such officer shall have the authority to arrest said defendant. . . ."

[3] Both Wahlberg and Furkart consented to the entry of judgment prior to trial and, hence, do not participate in this appeal.

white youths who shouted, "Kill the nigger," and various racial epithets. The youths threw rocks at the Coleman children and chased them for several blocks. The judge made no finding whether Guilfoyle made the statements, but found that he was present, heard the statements, threw a rock at the Coleman children, intentionally joined with his friends in intimidating them, and pursued them with his friends down the street.

The following day, Mary Deshaies, a teacher at the Mather School in Dorchester, took her fourth grade class (thirty-two students, of whom three were white) to Savin Hill Beach. Jesse Coleman was a member of the class. As the class walked back from the beach, Guilfoyle and two friends followed them, walking on the opposite side of the street. The youths made racial and obscene remarks to the class. Again, the judge made no findings as to whether Guilfoyle made the statements, but the judge noted that Guilfoyle heard the statements and continued to follow the group of students.

When the class, shadowed by Guilfoyle and his friends, reached the corner of Bay Street and Maryland Street, Guilfoyle and his friends spoke to several white youths who were gathered on the front porch of a nearby house. Several of the youths left the porch, walked out to the street, and threw rocks at the class. With their teacher, the class began to run down Bay Street. Guilfoyle threw a rock which hit one of the students and, with other white youths, chased the students down the street.

The teacher sought help from an ambulance driver who was in the area. While the teacher was talking with the ambulance driver, more rocks were thrown at the students. The judge made no finding as to whether Guilfoyle threw rocks at this time, but found that Guilfoyle remained with the group while rocks were thrown. The ambulance driver radioed for help and then drove toward the youths. Guilfoyle and the others fled. Guilfoyle was fifteen years old at the time of these incidents. He does not attend the Mather School.

The judge concluded that Guilfoyle violated G. L. c. 12, § 11H, and issued a permanent injunction pursuant to G. L. c. 12, § 11J, against Guilfoyle, as reproduced in the mar-

gin.[4] On appeal, Guilfoyle contends that (1) G. L. c. 12, §§ 11H & 11J, are inapplicable to minors, (2) the sanction imposed was unreasonable in scope and duration, (3) the judge erroneously denied Guilfoyle's motion for a trial by jury, and (4) the judge erroneously used the "preponderance of the evidence" standard of proof when the proper standard was "beyond a reasonable doubt." We affirm the judgment.

1. *Applicability of G. L. c. 12, §§ 11H & 11J, to minors.* Guilfoyle argues that minors are given a special status in many areas of the law. He cites various statutes giving special treat-

---

[4] "IT IS HEREBY ORDERED AND ADJUDGED THAT: A. Defendant Michael Guilfoyle and all persons in concert or participation with him shall be permanently enjoined from directly or indirectly: 1. assaulting, threatening, intimidating or harassing or attempting to assault, threaten, intimidate or harass, or causing or attempting to cause injury or damage to the person or property of Jesse Coleman, Mary Deshaies, Kristyn Atwood, Emily Harr, members of their families, or persons known to the defendants to be students of the Mather School, Dorchester, Massachusetts. 2. assaulting, threatening, intimidating or harassing or attempting to assault, threaten, intimidate or harass, or causing or attempting to cause injury or damage to the person or property of any person because of that person's race, color or national origin or the race, color or national origin of any person with them. 3. assaulting, threatening, intimidating or harassing, or attempting to assault, threaten, intimidate, or harass, or causing or attempting to cause injury or damage to the person or property of any person because he or she did or might complain or testify about acts prohibited by Massachusetts or Federal Law or did or might cooperate in any investigation concerning such acts. 4. preventing Jessie Coleman, Mary Deshaies, Kristyn Atwood, or Emily Harr, members of their families, or any other person, from enjoying full access to schools, homes, streets, beaches, and other places of public accommodation in Dorchester, because of that person's race, color, or national origin, or the race, color, or national origin of any person with them. And further, defendant Michael Guilfoyle shall be enjoined from 1. being present on or entering the grounds and property of the Mather School, Dorchester, Massachusetts during the hours of 6:00 a.m. to 6:00 p.m. on all days when school is in session; 2. knowingly approaching within one hundred (100) yards of Jesse Coleman, Mary Deshaies, Kristyn Atwood, or Emily Harr; 3. speaking to, telephoning, writing to or otherwise communicating with Jesse Coleman, Mary Deshaies, Kristyn Atwood, or Emily Harr or members of their families or any student of the Mather School, Dorchester, Massachusetts, except through defendant's counsel or by arrangement with the Civil Rights Division of the Department of the Attorney General; Pursuant to G. L. c. 12, § 11J, VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE."

ment to juveniles, e.g., G. L. c. 152, § 28 (1986 ed.) (Workmen's Compensation Act); G. L. c. 231, § 85Q (1986 ed.) (child trespassers). Guilfoyle's main argument seems to be, however, that G. L. c. 12, § 11H, is criminal in nature, providing for adult criminal sanctions, including incarceration, and thus should not apply to juveniles. He contends that the judge failed to provide the defendant the protection given juveniles. G. L. c. 119, §§ 65-72A (1986 ed.).

General Laws c. 12, § 11H, is clear and unambiguous. It applies to "any person." Guilfoyle is requesting that we interpret the statute so as to restrict its application to adults only. The reference he makes to other statutes which provide special treatment for juveniles shows that the Legislature knows quite well how to exclude juveniles from legislative provisions applying generally to other persons. The Legislature did not provide such an exception in § 11H. We decline to rewrite the statute as Guilfoyle asks. The Act, remedial in nature, was enacted to combat the serious problem of racial harassment by private parties. *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 821-822 (1985). To narrow the application of the statute to adults would undermine the intent of the Legislature.

Furthermore, Guilfoyle misreads G. L. c. 12, § 11H. The essence of the statute is not criminal, and the sanction imposed pursuant to the statute is not incarceration or a fine. The statute specifies that the Attorney General may bring a *civil* action for injunctive or other equitable relief. A juvenile is not immune to civil actions.

Guilfoyle asserts that the Act conflicts with the juvenile protection statutes found in G. L. c. 119. The intent of those statutes is to try to treat criminal juvenile offenders "not as criminals, but as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 281 (1976). The present case is a civil action; the problem which G. L. c. 119 was enacted to alleviate is not involved in this action.[5] In addition, a judge has discretion,

---

[5] Much of Guilfoyle's argument might be viewed as premature, in that the record reveals no criminal contempt proceeding against him. In any event, the point has been decided. "We do not read the requirement in

within constitutional limits, in handling contempt proceedings against a juvenile. "A Superior Court judge who tries a contempt complaint [arising out of a violation of an order issued pursuant to G. L. c. 12, § 11H] against a juvenile has discretion, within constitutional limits, to impound papers in the case, to protect the juvenile's identity, and to close the proceedings to the public." *Doe* v. *Commonwealth,* 396 Mass. 421, 423 (1985).

2. *Scope and duration of injunction.* Guilfoyle argues that the injunction was unreasonable in scope and duration in that it enjoins Guilfoyle from being in his "own backyard" and has no termination date. "It is a well settled principle that, in fashioning appropriate relief, the issuance and scope of equitable relief rests within the sound discretion of the judge." *Johnson* v. *Martignetti,* 374 Mass. 784, 794 (1978). The injunction in this case is one that promotes the public interest and is not to be judged by the standards applicable to private litigation. See *Commonwealth* v. *Mass. CRINC,* 392 Mass. 79, 88-89 (1984). Viewed in light of that standard, we conclude that the relief forged in this case is highly reasonable.

The first four paragraphs enjoin Guilfoyle from again violating the Act. The fifth paragraph prohibits him from being at the Mather School, a school he does not attend, during specified hours. Finally, Guilfoyle is prohibited from *knowingly* approaching within 100 yards of the victims. There was no error.

3. *Right to jury trial.* The judge properly denied Guilfoyle's motion for a jury trial. Guilfoyle concedes that there is no constitutional right to a trial by jury when the cause of action arises in equity. *McAdams* v. *Milk,* 332 Mass. 364, 366 (1955). *Parker* v. *Simpson,* 180 Mass. 334, 353-354 (1902). See *Gulesian* v. *Newton Trust Co.,* 302 Mass. 369, 371 (1939). At common law, there was no cause of action for violations of civil rights. *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 821 (1985). Thus, art. 15 of the Declaration of Rights providing

[G. L. c. 119] § 74 . . . as applying to the violation of a court order. Accordingly, the restrictions of G. L. c. 119 concerning the disposition of charges against juveniles do not apply to a charge of criminal contempt of court based on the violation of a court order." *Doe* v. *Commonwealth,* 396 Mass. 421, 423 (1985).

a right to trial by jury in actions known to the common law is inapplicable. *McAdams* v. *Milk, supra. Parker* v. *Simpson, supra.* See *Nei* v. *Burley,* 388 Mass. 307, 311-315 (1983) (no right to jury trial in G. L. c. 93A actions). General Laws c. 12, § 11H, creates an entirely new cause of action, not a new version of a traditional criminal proceeding. The statute prescribes equitable remedies — "injunctive or other appropriate equitable relief." G. L. c. 12, § 11H.

4. *Standard of proof.* Generally, the standard of proof in civil cases is a preponderance of the evidence. *Callahan* v. *Fleischman Co.,* 262 Mass. 437 (1928). In the past, we have made exceptions to this general rule when constitutional rights hung in the balance, and have applied the stricter "beyond a reasonable doubt" standard. See *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 275-276 (1978), and cases cited therein. Guilfoyle argues that, because of the criminal nature of the sanctions that would be imposed if he violates the injunction, an exception to the general rule should be made in this case. We disagree. The injunction imposed does not require the incarceration of, or fining of, Guilfoyle. At this stage, none of Guilfoyle's constitutional rights is hanging in the balance. Only if he violates the injunction does Guilfoyle become subject to the possibility of criminal sanctions.

*Judgment affirmed.*