**Gerard DEAN, Plaintiff, Appellant,**

v.

**CITY OF WORCESTER, et al., Defendants, Appellees.**

**No. 90–1093.**

United States Court of Appeals, First Circuit.

Heard Aug. 2, 1990.

Decided Jan. 23, 1991.

---

Terry Scott Nagel, Springfield, Mass., and John D. Egnal, Philadelphia, Pa., with whom Alan D. Sisitsky, Springfield, Mass., was on brief, for plaintiff, appellant.

Brian Rogal, Dedham, Mass., with whom Timothy M. Burke and Mark Newman, Needham, Mass., were on brief, for defendants, appellees Greaney and Murray.

Edward R. Joyal, Jr., Asst. Atty. Gen., for defendant, appellee Mattioli.

Elaine M. Lucas, Asst. City Sol., for defendants, appellees City of Worcester, Houlihan and Decelles.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Mistakenly identified and arrested as an escaped felon who had threatened to shoot

any officer who tried to return him to prison, plaintiff Gerard Dean brought the present civil action against the defendant police officers and the City of Worcester. Dean appeals from a grant of summary judgment in favor of all defendants. We affirm.

I

The facts leading up to Dean's arrest are uncontroverted. On September 3, 1985, Massachusetts State Police Officer Paul Greaney, assigned to the Violent Fugitive Arrest Squad, received information from a reliable informant that Richard Burbo, an escapee from the Massachusetts Correctional Institution at Shirley, was staying with an unknown female and her small child at a Worcester apartment. The informant advised Greaney that Burbo was armed with a .38 caliber revolver and that Burbo had expressed the intention to shoot any officer who attempted to return him to prison. Upon further investigation, Officer Greaney discovered that Burbo, at the time of the escape, was serving sentences for armed assault, armed robbery, and rape. An arrest warrant issued following Burbo's escape. Officer Greaney considered Burbo "armed and dangerous."

On September 4, Greaney and other members of the Violent Fugitive Arrest Squad, along with officers of the Worcester Police Department, located a male individual, resembling Burbo, seated on a rock at a city bus stop near the apartment at which Burbo reportedly was staying. After consultation, the officers decided to apprehend the subject at the bus stop, rather than at the nearby apartment, so as not to endanger the woman and child believed to be residing at the apartment. The officers decided that the subject would have to be apprehended and immobilized as quickly as possible in order to avoid endangering innocent bystanders and the arresting officers. Unbeknownst to the officers, the subject was not Burbo but Dean.

At about noon, a police car drove onto the sidewalk directly in front of Dean. Dean got to his feet as the police car approached. Two officers alighted from the car and pushed Dean down, causing his face to hit the sidewalk. One of the officers placed a gun to Dean's ear and threatened to blow his head off if he moved. Dean felt a knee in his back and a slight kicking to his feet. Dean was then lifted to his feet, tightly handcuffed, and pushed against a wall; in the process, he suffered a cut to his scalp. The police informed Dean that he was being placed under arrest. Dean gave his correct name and told the police that they had the wrong person.

After arresting Dean, the officers noticed that Dean appeared taller than Burbo was reported to be. The police decided to place Dean in a cruiser while they executed the search warrant for the nearby apartment where Burbo was staying. Burbo was arrested inside the apartment. A loaded .38 caliber revolver was seized from under a cushion on the couch where Burbo had been sitting.

The police explained their mistake to Dean and released him from custody. Dean had been detained for about thirty minutes and suffered minor physical injuries: a cut nose and scalp, a scratch on the neck, and welts on his back. He alleges that he later suffered severe emotional trauma as well.

Two years later Dean filed suit in the United States District Court for the District of Massachusetts. The amended complaint contains six counts: one count charges *respondeat superior* liability against the City of Worcester under the Massachusetts Civil Rights Act (MCRA);[1] two counts charge the Worcester police officers and Massachusetts state troopers with civil rights violations under 42 U.S.C. § 1983 and MCRA; three counts allege common law claims against the defendant officers for assault and battery, intentional infliction of emotional distress, and false

**1.** The claim against the City of Worcester was dismissed on the ground that MCRA does not impose *respondeat superior* liability on municipalities.

imprisonment.[2] Dean appeals the summary judgment dismissing the common law claims for assault and battery and intentional infliction of emotional distress, and the section 1983 claims alleging official use of excessive force in effecting the arrest.

## II

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The record must be viewed and reviewed in the light most favorable to the nonmoving party. *See, e.g., Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir.1990). When a motion for summary judgment is competently supported, however, the nonmoving party "may not rest upon the mere allegations or denials of [his] pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Fed.R. Civ.P. 56(e). A genuine issue exists only if a material conflict in the evidence warrants trial. *See, e.g., Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 73 (1st Cir.1990).

## III

Dean contends that the district court granted summary judgment on the section 1983 claims in mistaken reliance on an incorrect legal standard, and that there remains a genuine dispute as to the reasonableness of the force used in effecting Dean's arrest.

A civil rights claim alleging official use of excessive force in effecting an arrest must contend with the familiar fourth amendment "reasonableness" standard, which balances the public interest in effective law enforcement against the intrusiveness of the challenged police action in light of all the circumstances disclosed by the evidence. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). As with any judicial inquiry into the realm of the reasonable, we first identify our perspective. The inquiry is an objective one and the "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* 109 S.Ct. at 1872. We examine with care the particular facts and circumstances of the case, *id.*, to determine whether the force used exceeded "the ... force ... necessary" to effect the arrest from the perspective of an objectively reasonable officer at the scene, with due "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving...." *Id.*

■ Dean argues that the reasonableness standard annunciated in *Graham v. Connor* is less stringent than the "shock the conscience" test used by the district court. The district court indeed did refer to the "shock the conscience" and "good faith" standards superseded by *Graham v. Connor*. Although the court in the present case arrived at its determination in the course of an analysis of Dean's common law assault and battery claims, rather than the section 1983 claims, it considered the "facts and circumstances of the particular case" and determined that the force used by the officers "could not be viewed as ... unreasonable." Moreover, the section 1983 claims and the assault and battery claims arose out of the same facts and circumstances and Dean concedes that the rule of reasonableness relied on by the district court is "strikingly similar to the Fourth Amendment analysis commanded by *Graham v. Connor.*" We conclude that Dean was occasioned no prejudice by virtue of the district court's reference to some other standard, since the record demonstrates that the force used to effect the intended arrest was reasonable as a matter of law.

■ The district court correctly concluded that the defendant officers reasonably believed that Dean was the escaped felon, Burbo, and that Dean's unsupported allega-

---

**2.** Dean voluntarily dismissed the common law claims and the section 1983 claims for unlawful restraint and false imprisonment.

tions to the contrary were insufficient to raise a triable issue. The defendants submitted affidavits to the effect that Dean and Burbo were of similar physical appearance and that Dean was arrested near the apartment house at which Burbo was believed to be staying and where he was later found.

Dean contends that the misidentification was unreasonable because he is taller than Burbo.[3] We disagree. Dean was seated on a rock near the bus stop when first observed by the officers and when the arrest decision was made. As the police cruiser, carrying two arresting officers in plain clothes, approached the scene of the arrest at high speed and drove onto the sidewalk, Dean stood up. According to Dean, the cruiser came so close that it almost ran over his feet. The two officers in plain clothes, with guns drawn, got out of the cruiser "very fast," according to Dean. Given all the circumstances that conspired in their hapless misidentification of Dean as the "armed and dangerous" prison escapee, Burbo, the failure of the officers to note, instantaneously, as they suddenly alighted from the cruiser, that Dean was somewhat taller than Burbo, cannot be considered objectively unreasonable, particularly amidst the tension and urgency prevailing at the moment of the arrest.

■ As the officers reasonably believed that Dean was the escaped felon Burbo,[4] they were "entitled to do what the law would have allowed them to do if [Dean] had in fact been [Burbo]." *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971) (police had probable cause to arrest one person and reasonably mistook second person for first). The reasonableness of their use of force must be viewed from the perspective of the officers at the scene, the "circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 109 S.Ct. at 1871; *see also United States v. McQueeney*, 674 F.2d 109 (1st Cir.1982) (officer may use "such force as is reasonably necessary to effect an arrest").

It is undisputed that the officers at the arrest scene possessed reliable information that Burbo was an escaped felon who posed a serious safety threat to the officers and others; Burbo reportedly was armed,[5] had threatened to shoot any officer attempting to apprehend him, and had an extensive record of violent crimes. The officers were presented with another serious complication: the arrest warrant was to be executed in the presence of innocent bystanders at a bus stop on a busy city street. Finally, in the circumstances known to the officers, particularly Burbo's threat to shoot any police officer who attempted to apprehend him, it was entirely reasonable to anticipate that Burbo, given an opportunity, would resist arrest with deadly force. In the circumstances known to the defendant officers, it would have been unreasonable not to effect the intended arrest with adequate alacrity and sufficient force to subdue Burbo as quickly and surely as practicable without unnecessary harm to him, or unnecessary risk to the officers or innocent bystanders.

Dean argues that *any* use of force in these circumstances must be considered excessive since he offered no resistance. Yet, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973); *see also Furtado v. Bishop*, 604 F.2d 80, 95–96 (1st Cir.1979), amounts to a fourth amendment violation. It has long been recognized that "the right

---

**3.** The record indicates that Dean, at 6'1", is taller than Burbo, but there is no other evidence as to Burbo's height.

**4.** A reasonable mistake in identification which leads to an arrest does not violate the arrestee's constitutional rights. *See Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *Gero v. Henault*, 740 F.2d 78, 85 (1st Cir.1984)

("[a]s a matter of law," mistaken arrest of suspect police reasonably believed to be person named in warrant does not violate constitutional rights).

**5.** Indeed, a weapon was found in Burbo's constructive possession at the time of his arrest.

to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 109 S.Ct. at 1871.

The reasonableness of the force used is determined not only with reference to the need for the arrest and for reducing risk to the officers and the public but also with reference to the manner in which the arrest is effected. *See Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (constitutionality of seizure depends, *inter alia*, on "how it is carried out"). The reasonableness of the arresting force in the present case was further confirmed by compelling evidence that Dean's alleged injuries, though most unfortunate, were minor. Dean alleges a scratch on the neck, bruises on his back and a cut on the nose. The hospital record reports: "[n]o obvious signs of trauma." Dean did not seek out medical treatment until the following day, choosing first to consult with an attorney.

■ These minor physical injuries simply are insufficient to support an inference that the officers used inordinate force to effect the intended arrest in the "tense, uncertain, and rapidly evolving circumstances," *Graham*, 109 S.Ct. at 1872, surrounding the reasonably perceived need to subdue an armed felon on a busy city street.[6] Summary judgment on the section 1983 claims was proper in these circumstances, viewed in the light most favorable to Dean, as no trialworthy issue was raised concerning the objective reasonableness of the force used to effect the intended arrest.

## IV

Dean contends that the district court erroneously entered summary judgment on his common law claims against the defendant officers and on his MCRA claim against the City of Worcester.

■ Dean alleged common law claims for assault and battery and for intentional infliction of extreme emotional distress against the arresting officers. The district court found that Dean's assault and battery claims were deficient because the force used was neither "excessive, unwarranted, unreasonable, nor unjustifiable." *See Powers v. Sturtevant*, 199 Mass. 265, 266, 85 N.E. 84 (1908). The Massachusetts courts have held, in accord with section 3.07 of the Model Penal Code, that "an officer authorized to make an arrest may use 'such force as is reasonably necessary to effect the arrest.'" *Julian v. Randazzo*, 380 Mass. 391, 396, 403 N.E.2d 931 (1980). As Dean points out, in the circumstances of the present case the *Randazzo* standard is essentially the same as the fourth amendment analysis required under *Graham v. Connor*, *supra*. Accordingly, the identical reasoning which constrained our determination that the officers' use of force was objectively reasonable in fourth amendment terms, under *Graham v. Connor*, controls the "reasonableness" determination required on Dean's common law claims for assault and battery as well.

Similarly, summary judgment was compelled on Dean's common law claims for intentional infliction of emotional distress under Massachusetts law, which requires that the plaintiff show, *inter alia*, "that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community.'" *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145, 355 N.E.2d 315 (1976) (quoting Restatement (Second) of Torts § 46, comment d (1965)). Since the officers' conduct in effecting the intended arrest was objectively reasonable in the circumstances, the claims for intentional infliction of emotional distress must fail.

■ Dean's remaining claims are predicated upon alleged violations of the MCRA, Mass.G.L. c. 12, § 11I, which establishes a right of action for compensatory damages in favor of "[a]ny person whose exercise or

---

**6.** Dean likewise alleges psychic injury as a consequence of the police threat to use a gun. Nevertheless, since the officers, after the warning, could have employed violent force to prevent the escape of a person with Burbo's record for violent assaults and threats against the police, *see Garner*, 471 U.S. at 11–12, 105 S.Ct. at 1701, their advance warning that violent force would be used was a reasonable precaution against the *need to use it*.

enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with...." The MCRA claims against the defendant officers are predicated on their alleged violations of Dean's rights under the fourth amendment and under Massachusetts common law.[7] Since Dean's federal constitutional claims and state law claims were deficient or were dismissed voluntarily, no predicate remains for the MCRA claims.

*The judgment is affirmed. No costs to either party.*

---

**7.** The MCRA claim against the City of Worcester was predicated on a theory of *respondeat superior* liability. The district court dismissed the claim, citing *Hathaway v. Stone,* 687 F.Supp. 708, 711 (D.Mass.1988), for the proposition that a municipality is not vicariously liable for the actions of its employees under MCRA. *See also Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 473 N.E.2d 1128 (1988) (MCRA coextensive with § 1983 except for "state action" requirement). We decline comment on the issue, as the MCRA claim against the municipality fails in any event on account of the dismissal of all claims against the defendant officers of the Worcester Police Department.