COMMONWEALTH *vs.* THOMAS ADAMS & others.[1]

Suffolk. September 8, 1993. - December 15, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Police Officer. Joint Enterprise. Civil Rights*, Availability of remedy. *In-junction. Attorney General.*

In an action brought by the Attorney General seeking injunctive relief pursuant to G. L. c. 12, § 11H, against thirteen police officers for their excessive use of force in the performance of their duties, the evidence warranted the judge's conclusion that the defendants participated in a joint enterprise in which a citizen's civil rights were violated. [564-566] LIACOS, C.J., concurring.

In the circumstances of an action seeking injunctive relief pursuant to G. L. c. 12, § 11H, arising from a single egregious incident involving police officers' collective violation of a citizen's civil rights and their collective failure to prevent or report that violation, the judge in his discretion properly enjoined the officers from future misconduct of a similar nature in the performance of their duties [566-567], and the injunction was not overly broad in not being limited to acts involving only that particular citizen [567-568]. LIACOS, C.J., dissenting. LYNCH, J., concurring.

In the case of an appeal from an injunction, the effectiveness of which had been stayed for the year and one-half since entry of judgment, the trial judge, on motion of any of the parties, should in his discretion reconsider whether the terms or duration of the injunction should be amended due to changed circumstances. [568]

CIVIL ACTION commenced in the Superior Court Department on January 4, 1989.

The case was heard by *Hiller B. Zobel*, J.

[1]Michael J. Bukoff, Richard Paul Connolly, Francis Joseph Deary, John Hughes, Vincent D. Kelly, Joseph William Kenneally, Emmett Francis McNamara, Daniel F. O'Connor, Patti Ann Robinson, Perry Richard Roy, Christopher K. Shoulla, and Frederick Waggett.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Frank J. McGee* for the defendants.

*Richard W. Cole*, Assistant Attorney General (*Stanley J.
Eichner*, Assistant Attorney General, with him) for the
Commonwealth.

WILKINS, J. The Attorney General brought this action for
injunctive relief, pursuant to G. L. c. 12, § 11H (1992 ed.),
against the thirteen defendants, each of whom is a Boston
police officer. In May, 1992, a Superior Court judge entered
a judgment enjoining each defendant from using excessive
force while in the performance of police duties, from failing
to report to the proper authorities knowledge of any visible
injury occurring in the course of an arrest, and from failing
to report to the proper authorities knowledge of the use of
excessive force by any Boston police officer in the perform-
ance of that officer's duties.[2] We transferred the defendants'
appeal to this court on our own motion.[3]

We recite the trial judge's findings of fact leading to and
following the arrest of one John L. Smith, Jr., shortly after
sunrise on May 12, 1988, in Brookline. Smith, who had been
consuming cocaine, was sitting in his parked motor vehicle
near Fenway Park when he became concerned that, if he did
not leave the area, police officers in the vicinity would arrest
him for possession of a controlled substance. When Smith
drove away, officers in a police cruiser, the defendants Bukoff
and O'Connor, followed Smith because they believed that
Smith's conduct warranted a brief threshold inquiry. At Ips-

---

[2]The operative language in the injunction states that the defendants "are
while employed by the Boston Police Department, hereby,

> *Enjoined* from: (a) using excessive force while in the performance of
> her or his police duties; (b) failing to report to the proper authorities
> her or his knowledge of any visible injury occurring in the course of
> an arrest; and (c) failing to report to the proper authorities her or
> his knowledge of the use by any Boston Police officer of excessive
> force while in the performance of such officer's duties."

[3]A Justice of the Appeals Court suspended the injunction pending ap-
peal. 34 Mass. App. Ct. 1116 (1993).

wich Street, Smith drove through a red light, and police pursuit began in earnest. Smith committed several more traffic violations, knew the police wanted him to stop, but continued on nevertheless. At no time did he exceed any applicable speed limit. He then headed west on the Massachusetts Turnpike extension. The officers advised their dispatcher of the pursuit. Smith swerved his vehicle toward the pursuing police cruiser, intending to cause the officers to abandon the chase. Another police cruiser, occupied by the defendants Waggett and Robinson, joined the pursuit. Smith also threatened a collision with their cruiser. Two other cruisers, one occupied by the defendants Shoulla and Kenneally and the other occupied by the defendants Deary and McNamara, also joined the chase.

Smith went through the Brighton toll plaza without stopping and headed east on Soldiers Field Road and Storrow Drive. In separate cruisers, the defendants Hughes, Kelly, and Roy joined the procession, as did the defendants Connolly and Adams in their cruiser. Eight cruisers were now in pursuit of Smith. Smith left Storrow Drive and headed intown on Commonwealth Avenue. At Kenmore Square, he turned onto Beacon Street, headed toward Brookline. After a series of turns and Smith's evasion of a partial roadblock set up by two of the defendants, Smith's engine died on Borland Street in Brookline.

The judge found that each of the defendants "had developed not only a high degree of frustration and emotional excitement concerning Smith's refusal to stop, but also strong feelings of anger and personal animosity toward the as-yet unidentified driver of the vehicle they had been vainly trying to halt, who had repeatedly swerved so as to threaten one or another police cruiser." The defendant Waggett, operating the first cruiser to arrive, deliberately drove his cruiser's right front bumper into the driver's side door of Smith's vehicle and then backed away. The other cruisers arrived within a minute of Waggett's cruiser.

Waggett approached the Smith vehicle on the driver's side, while his partner Robinson approached the passenger side.

There were then eight armed police officers within ten feet of Smith's vehicle, which was boxed in by the cruisers. The doors of the Smith vehicle were unlocked. Smith was sitting quietly in his vehicle, alone. Each defendant was close enough to hear what was said and to see what was happening outside Smith's vehicle. When Waggett ordered him out of the vehicle, Smith responded by lying down on the front seat. Waggett, seeing that Smith was refusing to obey his order, broke the driver's side window with a flashlight. The defendant Kelly then broke the passenger side window with his baton. Kelly and the defendant Hughes reached in the vehicle and dragged Smith out through the window, although they could have more easily removed Smith by opening the door. At this point, every defendant became aware that Smith was unarmed and completely under police control. Waggett, Kelly, and Hughes threw Smith to the street. Smith did not attempt to strike any officer or to flee or avoid arrest. Nevertheless, without any valid law enforcement reason, Waggett, Kelly, and Hughes "hurled themselves on top of Smith" to punish him for leading the police in the chase. Other unidentified officers joined the pile. Each defendant saw what was happening, approved of it, and made no attempt by word or deed to protect Smith, because each wished to punish Smith for his behavior during the chase. Each defendant stood ready to participate if opportunity offered or if asked to do so. No supervisor was present. No officer had authority over any other officer. Smith suffered contusions, cuts, and bruises in the scuffle. Waggett, Kelly, and Hughes then handcuffed Smith's hands behind his back and left him face down on the pavement. Although there was no valid police reason to leave Smith there, Smith remained face down for five to ten minutes. No further physical force was needed to restrain Smith. From time to time, when Smith raised his head or upper body, one of the defendants put a foot on Smith's back or head and pushed him to the pavement, causing contusions on Smith's back and scalp. Each defendant knew of this conduct and approved of it. No defendant made any effort to stop it or to object to it. Two of the defendants then took Smith,

whose wounds were plainly visible, to the police station. Rule 304 (6) of Boston police department rules and regulations required each defendant to report the visible injuries incurred in the course of Smith's arrest and the names of all persons involved, but no defendant did so.

The judge ruled that excessive force was used in removing Smith from his vehicle, in throwing Smith to the pavement, and in piling on top of Smith. Pushing Smith's body and face to the pavement by means of a shod foot involved excessive force on a person in custody. Bukoff and O'Connor, as the arresting officers, tolerated the use of excessive force in violation of police department rule 318-A (5). Each defendant, the judge concluded, knowingly permitted the use of excessive force on Smith and either participated in the application of excessive force or shared the mental state of those who were applying it, while keeping themselves in position to assist if help were needed or requested. The judge concluded that the defendants had engaged in a joint venture, and thus each was vicariously liable for the acts of the others.

Discussing the question whether the defendants' conduct amounted to a violation of Smith's civil rights, the judge concluded "these police officers, many of considerable professional experience, simply did not regard their treatment of Smith as either improper or unusual. Their testimony and demeanor, together with the documentary record, made plain to the Court that each of them considered the incident so insignificant as to merit no particular concern then or afterward, either by themselves or anyone else." He added that "[t]hese officers acted as though none had ever heard that an arrested person possessed any rights which an offended police officer was bound to respect. This Court cannot otherwise explain the defendants' casually disregarding the plain requirement of [Boston police department] Rule 303(2) that police officers are 'bound to refrain from any use of force that unnecessarily tends to administer punishment at the hands of a police officer,' and the explicit command of Rule 318-A not only to treat a prisoner 'in a fair and humane manner,' but to respect his rights." "They ignored without the slightest hesi-

tation, without the briefest consideration, the fundamental principle, also contained in Rule 303(2), that 'responsibility for punishment of criminal acts rests solely with duly constituted courts of law and penal institutions and is by no means extended to the police.' " "Thus they set out to teach this scofflaw a lesson. Unfortunately, in doing so, they themselves gave the law disrespect. By deliberately inflicting excessive physical force; by failing to protect Smith from fellow officers who were exerting excessive physical force on him; or by participating in the lawless infliction of summary street-level punishment, each and every defendant in some way deprived Smith of civil rights guaranteed him under the Massachusetts Constitution and the Civil Rights Act, G. L. c. 12, §§ 11H-J."

The judge then turned his attention to the questions whether an injunction enjoining future misconduct should be issued and, if so, what its nature and scope should be. The Commonwealth contended that only the threat of sanctions could deter the defendants from lawless disregard of citizens' civil rights. The defendants argued, however, that an injunction would make them incapable of using sound police judgment and would even put them at physical risk. The judge thought it significant that none of the defendants expressed remorse about any part of the incident. On the question of what relief to grant, if any, the judge rightly considered the defendants' attitudes, including their denials in their testimony of facts that he had found to be true on affirmative evidence before him.[4] The judge's low assessment of the defendants' candor affected his decision whether sanctions were necessary. "Moreover," he added, "the lack of memory from

---

[4]The Commonwealth presented civilian witnesses, residents of Borland Street, who saw certain portions of the events involving Smith and the officers.

The judge was most careful not to base any finding on his disbelief of aspects of the officers' testimony, especially their denial that particular acts of violence toward Smith ever took place and their unwillingness to admit that other defendants, well-known to them, were present at the scene. See *Commonwealth* v. *Michaud*, 389 Mass. 491, 498 (1983) (disbelief of testimony does not support a finding that the opposite is true).

which the defendants professed to suffer, particularly about the identities of fellow officers and significant activities which took place in their presence, reinforces my conviction that the officers, in the phrase of the day, 'don't get it,' and that they do not understand how improperly they behaved on Borland Street and how unacceptably they acted thereafter."

The judge determined that an injunction was necessary for the public good. He concluded that the Attorney General had established that the defendants must be enjoined from the kind of conduct that they had engaged in on Borland Street and from failing to report certain information to their superiors so that the defendants would not feel free to continue their practices. The injunction first described in this opinion was therefore entered.

The defendants' principal arguments challenge both the issuance of the injunction and its scope. Before discussing these claims, however, we shall dispose of the defendants' other contentions. The Attorney General had explicit authority to bring this action pursuant to G. L. c. 12, § 11H.[5] Although they express unhappiness that the judge made the findings of fact that he did, the defendants make no reasoned argument that any of the judge's findings of fact were "clearly erroneous." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

A more substantial argument is the claim that the judge erred in ruling that the officers who were not identified as having had physical contact with Smith nevertheless violated the Massachusetts Civil Rights Act. These nonbattering defendants argue that there was no evidence to warrant the finding of their involvement in a joint venture in which

---

[5]The first sentence of § 11H states as follows: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."

Smith's civil rights were violated. We disagree. The judge properly concluded, based on the subsidiary facts, that there was a joint enterprise in which each defendant participated. The subsidiary facts, which were warranted by the evidence, include the findings that each of the defendants, including those who did not touch Smith, (1) knew that excessive force was being applied to Smith, (2) knowingly approved and permitted the use of excessive force on him, and (3) shared the mental state of those applying that force. In such circumstances, there was a joint enterprise in which Smith's civil rights were violated, and, therefore, the act of each participant in the enterprise is chargeable vicariously against the rest. See *Bell* v. *Mazza*, 394 Mass. 176, 184 (1985); *O'Neill* v. *Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (an episode of excessive force of sufficient duration could "support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator").

Quite apart from the joint venture theory as a basis for ruling that the nonbattering officers violated Smith's civil rights are the facts that each of the nonbattering defendants, aware of the threatening and intimidating physical acts, did nothing to stop them. In the Federal civil rights context, "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under [42 U.S.C.] § 1983 for his nonfeasance." *Gaudreault* v. *Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). See *O'Neill* v. *Krzeminski, supra* at 11; *Bruner* v. *Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982), cert. denied, 459 U.S. 1171 (1983); *Byrd* v. *Brishke*, 466 F.2d 6, 10-11 (7th Cir. 1972); *Hathaway* v. *Stone*, 687 F. Supp. 708, 712 (D. Mass. 1988); *Bibbo* v. *Mulhern*, 621 F. Supp. 1018, 1025 (D. Mass. 1985).[6] The same principle appropriately applies under the State Civil Rights Act. See *Batchelder* v. *Al-*

---

[6]Of course, "[a] police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack." *Gaudreault* v. *Salem*, 923 F.2d 203, 207 & n.3 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). See *O'Neill* v. *Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).

*lied Stores Corp.*, 393 Mass. 819, 822-823 (1985). The fail-
ure of the nonbattering defendants to intervene to protect
Smith's rights, when they knew that they had a duty to do
so, independently supports the conclusion that all the defend-
ants violated Smith's civil rights.

We come then to the defendants' challenges to the issu-
ance of any injunction, even if the defendants did violate
Smith's civil rights. They argue that injunctive relief is
barred because the judge had no authority to impose continu-
ing judicial supervision of police officers' street activities and,
furthermore, that no injunction could properly be issued in
1992 based on a single incident in 1988. Section 11H of
G. L. c. 12 authorizes the Attorney General to seek equita-
ble relief to protect the peaceable exercise of rights secured
by law when threats, intimidation, or coercion interfere or
attempt to interfere with rights secured by law. There is no
explicit, and no justification for finding an implicit, exception
for officers of the law, although the defendant police officers'
status may be relevant in determining whether to issue a par-
ticular injunction. See *Perez* v. *Boston Hous. Auth.*, 379
Mass. 703, 730 (1980).

In appropriate circumstances, a judge has discretion to en-
join future police misconduct. A single, egregious incident in-
volving a collective violation of a citizen's rights and a collec-
tive failure to prevent or to report that violation would
warrant issuance of an injunction where, as here, the judge
found that, without any injunction, the defendants "will re-
gard themselves as free to continue" their unlawful conduct.
Moreover, the judge was justified in regarding the failure of
the defendants, many of whom had considerable professional
experience, to report the incident as contributing in a funda-
mental way to the obstruction of justice.

The law leaves to the sound discretion of the trial judge
the issuance and scope of equitable relief. *Commonwealth* v.
*Guilfoyle*, 402 Mass. 130, 135 (1988). The fact that this
action was brought and an injunction was sought by the At-
torney General, an elected official charged with the duty of
protecting the public interest, lends support to the reason-

ableness of the judge's exercise of discretion. See *id.*; *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 88-90 (1984). Each defendant denied that any incident involving excessive force occurred. Each defendant professed difficulty in identifying which officers were present, although each officer knew all or almost all the other defendants. In such circumstances, the judge was entitled to consider the defendants' lack of candor, as well as their failure to report the incident, in deciding whether sanctions were necessary.

Finally, we consider the defendants' argument that the injunction is overly broad. The judge was warranted in not limiting the injunction to acts involving only John L. Smith, Jr. The problems disclosed by the judge's findings justified both a general prohibition of the use of excessive force and a general imposition of reporting requirements. This case involves intentional misconduct, the application of excessive force to Smith as punishment for his wrongdoing, which was an abuse of the defendants' powers under the law. This case involves defendants who failed to understand that what they did and did not do was wrong and in violation of police department regulations. This case involves a collective unwillingness to intervene to protect a citizen from the denial of his civil rights by fellow police officers. The imposition of sanctions was wholly justified.

The defendants argue that, if the injunction were issued, they would not be able to perform their jobs properly. We disagree. The prohibition against the use of excessive force places no new restraint on the defendants. It states the law under which in all events the defendants must conduct themselves. The reporting requirements present no personal safety concerns. Boston police department regulations, moreover, require that an officer report crimes and visible injuries incurred in the course of an arrest.

There is, of course, a risk of contempt of court for failing to report knowledge of the use of excessive force by another officer. The sometimes fine line between the proper and necessary use of force and excessive force may be difficult to draw in particular cases. In the circumstances, however, a

court order is warranted that tends to help resolve any defendant's doubt about whether excessive force has been used in favor of reporting an incident, leaving it to superior officers to pass judgment on the issue.

There is one matter that may require further consideration by the trial judge. The injunction has no limit in time. In the Commonwealth's prayers for relief, the Attorney General requested an injunction of two years' duration. Because of the Appeals Court's stay of its effectiveness, the injunction has not been in effect for two years. It may be that the attitude and understanding of one or more of the defendants have changed in the year and one-half since the judgment was entered. On motion of one or more defendants or the Attorney General, the trial judge should exercise his discretion as to whether the injunction should continue in effect in its present form and whether there should be any limit on the duration of the injunction. These considerations do not, however, affect our conclusion that the judgment should be affirmed.

*Judgment affirmed.*

LIACOS, C.J. (concurring in part and dissenting in part). I agree with the court that the activities of the defendants amounted to a violation of Smith's civil rights, either by direct application of force or through joint venture liability, as found by the trial judge. I write separately for two reasons. The first is to point out that our decision in this case makes clear that, in appropriate cases, a defendant's physical acts or complicity in the acts of another may subject the defendant to liability under the Massachusetts Civil Rights Act, G. L. c. 12, § 11H (1992 ed.) (Civil Rights Act). My second reason for writing is that, although I agree that the defendants were subject to liability under the Civil Rights Act, I do not agree that the scope of the injunction issued by the trial judge was proper.

In past decisions, this court has suggested that direct violations of an individual's civil rights would not subject a de-

fendant to liability under the Civil Rights Act. See *Longval* v. *Commissioner of Correction*, 404 Mass. 325, 333 (1989) (unlawful use of force to compel prisoner to do something would not violate the Civil Rights Act because direct violation did not involve threat, intimidation or coercion); *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 781 (1987) (legislation which directly eliminates individual's rights, but does not seek to force individual to do or not do something, does not violate the Civil Rights Act). See also *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 719 (1989), and cases cited (relief typically granted under the Civil Rights Act where there was physical confrontation accompanied by threat of harm). Indeed, not all direct violations of a person's rights should subject the actor to liability under the Civil Rights Act. Under the circumstances of this case, however, where the defendants directly violated Smith's rights, or stood by and allowed such a violation to occur despite a duty to intervene, and, in addition, were acting out of anger and personal animosity without regard to the existence of Smith's rights, injunctive relief under the Civil Rights Act was warranted. See *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 104 (1987) (O'Connor, J., dissenting) (coercion involves restraint or domination of another's will and appears to refer to restraint accomplished by physical force).

While I agree that the defendants violated the Civil Rights Act and that an injunction should have been issued, I do not believe that the injunction issued by the trial judge is consonant with our case law. In discussing the standard for an injunction issued pursuant to the Civil Rights Act, we noted in *Commonwealth* v. *Guilfoyle*, 402 Mass. 130 (1988), that "the issuance and scope of equitable relief [granted under the Civil Rights Act] rests within the sound discretion of the judge," and that an injunction under G. L. c. 12, § 11H, being one that promotes the public interest, "is not to be judged by standards applicable to private litigation." *Guilfoyle, supra* at 135, citing *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 88-89 (1984). Thus, for example, a showing of

irreparable harm by the party seeking the injunction would not be required. See *Mass. CRINC, supra* at 88-89.

*Guilfoyle* and *Mass. CRINC* do not suggest, however, that other traditional equitable principles would not be applicable in fashioning relief under the Civil Rights Act. Accordingly, the trial judge should have followed cases such as *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1 (1939), where this court said:

> "Relief by injunction against the defendants . . . should be broad enough to prevent recurrence in the future of any of the wrongs found to have been already committed by them and to forestall any other or further wrongs which the proof shows to have been threatened or which the previous conduct of these defendants indicates as likely to be committed. It should not, however, extend beyond the scope of the bill, reasonably construed, and should not prohibit acts which there is no reasonable ground to fear will be done."

303 Mass. at 14. See *District Att'y for the Plymouth Dist.* v. *Selectmen of Middleborough*, 395 Mass. 629, 634 (1985) (modifying injunction that was too broadly worded); *Brookline* v. *Goldstein*, 388 Mass. 443, 451 (1983) (vacating injunction and remanding because injunction should be no broader than required to protect plaintiff from harassment by defendant); *Wilson* v. *Jennings*, 344 Mass. 608, 620 (1962) (modifying decree to conform to bill filed by plaintiff); *R.M. Sedrose, Inc.* v. *Mazmanian*, 326 Mass. 578, 580-581 (1950) (where plaintiff sought to enjoin the selling of specified items, it was error to enjoin the selling of other items). Furthermore, where public officials are the subject of an injunction, the rule that the injunction should be no more intrusive than necessary to achieve the legally justified result has particular relevance. *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 730 (1980).

The judge below concluded that "although the defendants all shared the culpability, they did not do so equally. Al-

though the differentiation may be pertinent in later phases of the case, it is immaterial to the present disposition. Whatever a defendant's degree of guilt here, all are subject to restraint against recurrence." Because the trial judge was concerned with "recurrence" when he issued his injunction, he exceeded his discretion by not tailoring the injunction to enjoin the defendants from doing what the judge found they actually did. Thus, Waggett, Kelly, Hughes, O'Connor, and Bukoff, the only defendants who, the trial judge specifically found, used physical force, should be enjoined to the extent of the trial judge's original injunction. The remaining defendants, however, should be enjoined only from doing what the trial judge found they actually did: failing to report to the proper authorities her or his knowledge of any visible injury occurring in the course of an arrest, and failing to report to the proper authorities her or his knowledge of the use by any Boston police officer of excessive force while in the performance of such officer's duties.[1]

LYNCH, J. (concurring). The United States Supreme Court has held that excessive use of force claims against police officers are properly analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under a substantive due process standard.[1] *Graham* v. *Connor*, 490 U.S.

---

[1]I agree with the court that the trial judge properly exercised his discretion in not limiting the injunction to acts involving only Smith.

[1]Prior to *Graham* v. *Connor*, 490 U.S. 386, 388 (1989), courts analyzed excessive force claims under a substantive due process standard. See *Hathaway* v. *Stone*, 687 F. Supp. 708, 712 (D. Mass. 1988); *Bibbo* v. *Mulhern*, 621 F. Supp. 1018, 1024 (D. Mass. 1985); *Schiller* v. *Strangis*, 540 F. Supp. 605, 614 (D. Mass. 1982), citing *Rochin* v. *California*, 342 U.S. 165, 172 (1952). Substantive due process cases have held that the conduct must be so egregious as to "shock the conscience" of the court to violate the due process clause. *Temple* v. *Marlborough Div. of the Dist. Court Dep't*, 395 Mass. 117, 130 (1985). *Schiller* v. *Strangis*, *supra*, citing *Rochin* v. *California*, *supra*. In determining whether substantive process has been violated, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was

386, 388 (1989). *Dean* v. *Worcester*, 924 F.2d 364, 367 (1st Cir. 1991).

The objective reasonableness standard "balances the public interest in effective law enforcement against the intrusiveness of the challenged police action in light of all the circumstances disclosed by the evidence." *Dean* v. *Worcester*, *supra*. The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*, quoting *Graham* v. *Connor*, *supra* at 397. Proper analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* v. *Connor*, *supra* at 396. " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." *Id.*, quoting *Johnson* v. *Glick*, 481 F.2d 1028 (2d Cir.), cert. denied sub nom. *Employee-Officer John* v. *Johnson*, 414 U.S. 1033 (1973). Indeed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham* v. *Connor*, *supra* at 396-397.

I would apply the "objective reasonableness" test of *Graham* in cases arising under the Massachusetts Constitution and G. L. c. 12, §§ 11H-11J, as well. In rendering his judgment, the judge placed great emphasis on the officers' wish to punish Smith. He concluded:

---

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Schiller* v. *Strangis*, *supra* at 616, quoting *Johnson* v. *Glick*, 481 F.2d 1028 (2d Cir.), cert. denied sub nom. *Employee-Officer John* v. *Johnson*, 414 U.S. 1033 (1973).

"These officers violated Smith's civil rights not out of a specific intent to violate them . . . but rather from a shared belief that in staging his own version of *Smokey and the Bandit*, Smith had showered a platoon of Boston police officers with disobedience and disrespect, in the process endangering their safety and making fools of them all. Thus they set out to teach this scofflaw a lesson."

The subjective motivations of the individual officers have no bearing on whether the police officers were acting with objective reasonableness. *Graham* v. *Connor, supra* at 397. The other findings of the judge make clear, however, that he would have found that the officers were acting unreasonably apart from their motivation, and, therefore, I see no reason to remand the case for application of the objective reasonableness standard. Furthermore, I have grave doubts concerning the application of joint venture theories of criminal law to police officers undertaking lawful activities which are then carried out in an unlawful manner. Such a theory has never been applied in this Commonwealth in these circumstances nor have I been able to discover any precedent for such application elsewhere. Since the officers here were also found liable for failure to come to Smith's aid, I would sustain the result on this ground alone.