GAIL A. CAHALY & others[1] *vs.* BENISTAR PROPERTY
EXCHANGE TRUST CO., INC., & others.[2]

No. 05-P-1717.

Suffolk. November 1, 2006. - April 17, 2007.

Present: KANTROWITZ, COWIN, & GRAINGER, JJ.

Further appellate review granted, 449 Mass. 1107 (2007).

*Practice, Civil,* Relief from judgment, Judicial discretion, New trial, Judgment
notwithstanding verdict. *Judgment,* Relief from judgment. *Jurisdiction,*
Personal, To reach and apply assets. *Conversion. Fiduciary. Fraud. Joint
Tortfeasors.*

In a civil case, the trial court judge properly exercised her discretion in grant-
ing the plaintiffs a new trial against one defendant on the basis of newly
discovered evidence, pursuant to Mass.R.Civ.P. 60(b)(2), where evidence
relied on by the judge (an affidavit by a codefendant who had exercised
his privilege under the Fifth Amendment to the United States Constitution
at trial) was, despite credibility issues, material, likely to affect the outcome
if believed, and admissible. [673-676]
The record in a civil case supported the judge's findings of significant contacts
and substantial activities in Massachusetts sufficient to support the exercise
of jurisdiction over an officer and an owner of a corporation [676-677];
further, the judge properly concluded that piercing the corporate veil was
appropriate in the case [677].
Defendants seeking a new trial in a civil matter failed to submit evidence that
any alleged jury misconduct had taken place [677-678] and did not
demonstrate that proffered newly discovered evidence would likely affect
the outcome of trial [678].
A trial court judge properly exercised her authority, after entering judgment in
favor of the plaintiffs in a civil action against certain defendants, to reach
and apply any cause of action the defendants had against a codefendant,
and to provide safeguards, such as giving the plaintiffs control over the
cause of action, to protect the value of the claim. [678-679]
In a civil action, the judge properly granted summary judgment to the plaintiffs

[1]Jeffrey M. Johnston; Bellemore Associates, LLC; Massachusetts Lumber
Company, Inc.; Joseph Iantosca, individually and as trustee of the Faxon Heights
Apartments Realty Trust and Fern Realty Trust; Belridge Corporation.

[2]Benistar Ltd.; Benistar Employer Services Trust Corporation; Benistar Ad-
min. Services, Inc.; Carpenter Financial Group, LLC; Molly Carpenter; Daniel
E. Carpenter; Merrill Lynch, Pierce, Fenner & Smith, Inc.; UBS Paine-
Webber, Inc.; and U.S. Property Exchange.

on their claims of conversion against certain defendants, where the evidence established that the defendants in question failed to remain within the restrictions that defined their authorized use of the plaintiffs' funds [679-680]; further, sufficient evidence existed to support a jury finding of a fiduciary relationship between the defendants and the plaintiffs [680] and to support a finding of fraud [680-681].

The judge in a civil action properly granted summary judgment in one defendant's favor on claims of aiding and abetting a breach of fiduciary duty and of aiding and abetting conversion, where the facts, viewed in the plaintiffs' favor, did not prove the element (under New York law) of the defendant's actual knowledge of the breach of duty or the conversion. [681-683]

CIVIL ACTIONS commenced in the Superior Court Department on January 9, 16, 22, and 23, 2001; February 6, 2001; September 20, 2001; and April 30, 2002.

After consolidation, motions to dismiss and for summary judgment were heard by *Margot Botsford*, J.; the case was tried before her, and questions of law were reported by her to the Appeals Court.

*Charles Fried & Anthony R. Zelle (John E. O'Brien, Jr., & Colleen C. Cook* with them) for the plaintiffs.

*John R. Snyder* for Merrill Lynch, Pierce, Fenner & Smith, Inc.

*Gary R. Greenberg (Jack E. Robinson & Brooks L. Glahn* with him) for Benistar Property Exchange Trust Co., Inc., & others.

*R. Todd Cronan (Paul E. Nemser* with him) for UBS Paine-Webber, Inc.

GRAINGER, J. This matter, involving protracted multiparty litigation, is presented in part by an amended report pursuant to Mass.R.Civ.P. 64(a), as amended, 423 Mass. 1403 (1996), and in part by cross appeals from an amended final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974).

The following facts are uncontested: the plaintiffs were investors who each separately contracted with defendant Benistar Property Exchange Trust Company, Inc. (Benistar), for the purpose of deferring tax obligations on proceeds from the sale of their investment properties. They did so pursuant to 26 U.S.C. § 1031, whereby a property owner may avoid recognition of

gains from the property's sale by engaging in a "like-kind" property exchange within 180 days. See 26 U.S.C. § 1031(a)(3) (2000). This tax advantage required the plaintiffs to transfer their sale proceeds to an escrow account, qualified trust, or qualified intermediary pending their purchase of replacement property. The plaintiffs here arranged for the proceeds from their respective property sales to be sent to Benistar, which advertised itself as a qualified intermediary under § 1031.

Benistar thus came to be in possession of the plaintiffs' funds, subject to written agreements titled, variously, "Exchange Agreement," "Exchange Fee Agreement," "Escrow Agreement," or "Account Selection Form" (the agreements). The agreements expressly provided that the plaintiffs' funds were to be invested in either a three-percent (per annum) "money market" account or a six-percent (per annum) "investment" account. The agreements also required Benistar to deliver the escrowed funds to the sellers of the replacement properties, or to the plaintiffs themselves, upon the plaintiffs' instructions. While in possession of the plaintiffs' funds, Benistar engaged in high-risk options trading, eventually losing approximately nine million dollars of the plaintiffs' funds.

During the time of Benistar's trading, the funds were first held in brokerage accounts at Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), and subsequently transferred to similar accounts at UBS PaineWebber, Inc. (PaineWebber). Additional facts are discussed below as they arise in the context of relevant claims.

*Procedural history.* Starting in January, 2001, the plaintiffs filed actions (later consolidated) against Benistar, various Benistar affiliates,[3] Merrill Lynch, PaineWebber, Molly and Daniel Carpenter (officer and owner of Benistar, respectively), and Martin Paley (Benistar's president), asserting claims of breach of contract, conversion, breach of fiduciary duty, fraud, misrepresentation, and violation of G. L. c. 93A. In addition, the plaintiffs' claims against Merrill Lynch and PaineWebber

---

[3]Benistar Admin. Services, Inc.; Benistar Employer Services Trust Corporation; Benistar Ltd.; Carpenter Financial Group, LLC; and U.S. Property Exchange.

included aiding and abetting the conversion and breach of fiduciary duty committed by Benistar, violation of the Connecticut Unfair Trade Practices Act, and violation of the New York Consumer Protection Act.

In March, 2002, the trial judge[4] granted summary judgment to the plaintiffs on their claims of conversion and breach of contract against Benistar arising out of the misuse and eventual loss of their funds. She allowed the remaining common-law claims and consumer protection claims to proceed to trial. In July, 2002, the judge granted summary judgment for PaineWebber on the plaintiffs' aiding and abetting claims, arising out of PaineWebber's relatively brief (three-month) role as investment broker for Benistar's speculations after Merrill Lynch terminated the Benistar account. In December, 2002, a jury found Benistar, its principals, and Merrill Lynch liable on all of the plaintiffs' common-law and Connecticut and New York consumer protection claims.

In February, 2003, the judge allowed Merrill Lynch's motion for judgment notwithstanding the verdict (judgment n.o.v.). The judge found scant evidence that Merrill Lynch had actual knowledge that Benistar was using funds belonging to third parties, and no evidence that Merrill Lynch had actual knowledge that any restrictions attached to those funds.[5]

The plaintiffs' claims under G. L. c. 93A were tried to the judge in March, 2003. On these claims, she found Benistar, Daniel Carpenter, and Paley liable and awarded double damages; the judge found Molly Carpenter not liable.

In February, 2004, and just within the one-year time period prescribed by Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), the plaintiffs moved for reinstatement of the jury verdict against Merrill Lynch on the basis of newly discovered evidence, discussed in detail below. Benistar, several corporate affiliates, and the Carpenters filed a motion for new trial in May of the same year. The judge held evidentiary hearings on those mo-

---

[4]This case benefited from docketing in the Superior Court business litigation session; consequently, virtually all motions were able to be heard and decided by the trial judge.

[5]She also found insufficient evidence that Merrill Lynch provided substantial assistance in the conversion or breach of fiduciary duty.

tions and, in August, 2004, denied the plaintiffs' motion to reinstate the verdict, instead granting the plaintiffs a new trial against Merrill Lynch based on the newly discovered evidence. See Mass.R.Civ.P. 60(b)(2). At the same time the judge denied the Benistar motion for a new trial.

An amended rule 64(a) report issued in November, 2004, asking this court to review the trial court's grant of judgment n.o.v. to Merrill Lynch as well as the grant of a new trial against Merrill Lynch to the plaintiffs. On the same day, an amended partial and final judgment under rule 54(b) was entered on the plaintiffs' claims against the Carpenters, Benistar, certain Benistar corporate affiliates,[6] Paley,[7] and U.S. Property Exchange.[8] The judgment also dismissed all of the plaintiffs' claims against PaineWebber. The plaintiffs have appealed from the judgment, and the Carpenters, Benistar, and the corporate affiliates have cross-appealed.

*Discussion.* We agree that the posture of this case recommends a rule 64(a) report of the judge's decisions to grant judgment n.o.v. to Merrill Lynch and to grant the plaintiffs a new trial, so that these can be considered at the same time as the final judgment entered under rule 54(b), avoiding piecemeal appellate review.[9] We turn first to the grant of a new trial against Merrill Lynch and then discuss, in turn, Benistar's appeal and

---

[6]Benistar Ltd.; Benistar Employer Services Trust Corporation; Benistar Admin. Services, Inc.; and Carpenter Financial Group, LLC. As to these defendants, the judge determined in September of 2003 after a jury-waived trial that disregard of the corporate form was appropriate and that they should share in the liability of Benistar and the Carpenters. See part 1, *infra.*

[7]Although the jury had returned verdicts for the plaintiffs against Paley and the judge had found against him under G. L. c. 93A, the final judgment was in Paley's favor due to a stipulation of dismissal entered after his posttrial agreement to waive his testimonial privilege and provide evidence for the plaintiffs' use in their motion to reinstate the verdict against Merrill Lynch. See note 10, *infra,* and accompanying text. (Paley has not participated in the appeal.)

[8]U.S. Property Exchange was found liable as the corporate successor to Benistar and has not participated in the appeal.

[9]"If the trial court is of opinion that an interlocutory finding or order made by it so affects the merits of the controversy that the matter ought to be determined by the Appeals Court before any further proceedings in the trial court, it may report such matter, and may stay all further proceedings except such as are necessary to preserve the rights of the parties." Mass.R.Civ.P. 64, as amended, 423 Mass. 1403 (1996). See *Lyons* v. *Globe Newspaper Co.,* 415 Mass. 258, 261 n.4 (1993), and cases cited.

that of the plaintiffs involving PaineWebber. We conclude by affirming in all respects.

*The grant of a new trial with respect to claims against Merrill Lynch.* We review a judge's decision on a motion for relief from judgment under rule 60(b) for a "clear abuse of discretion." *Tai v. Boston,* 45 Mass. App. Ct. 220, 224 (1998), quoting from *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.,* 401 Mass. 155, 158 (1987). Here, the judge found that the material presented by the plaintiffs as newly discovered evidence under rule 60(b)(2) supported their claim that Merrill Lynch had possessed actual knowledge that Benistar was investing client funds subject to restrictions, and had provided substantial assistance to the Benistar defendants in their misconduct.

The judge based her rule 60(b)(2) analysis on two sources of evidence presented by the plaintiffs. One source, defendant Martin Paley, had asserted his privilege under the Fifth Amendment to the United States Constitution at trial, but waived that privilege in February, 2004, when he provided an affidavit to the plaintiffs.[10] In that affidavit, Paley, president of Benistar, recounted a conversation with Gerald Levine, a broker at Merrill Lynch, in which Paley stated that the money in Benistar accounts was client funds held in escrow, and that those funds were required to be made available to clients upon request within forty-eight hours.

Merrill Lynch argues that the judge abused her discretion because posttrial affidavits of codefendants who exercised their Fifth Amendment privilege in a criminal trial are not considered newly discovered evidence in many circuits of the United States Court of Appeals. See cases cited in *United States* v. *Montilla-Rivera,* 115 F.3d 1060, 1065-1066 (1st Cir. 1997). Our courts

---

[10]The plaintiffs entered into a posttrial settlement agreement with Paley in which they promised to dismiss their claims against him if he waived his Fifth Amendment privilege and testified, and if the plaintiffs' motion to reinstate the jury verdict was granted. (See note 7, *supra.*) Paley's liability, jointly and severally with other defendants, otherwise would have stood around sixteen million dollars. Merrill Lynch asserts that the affidavit represents no more than testimony purchased by the plaintiffs, and should therefore be excluded on public policy grounds. However, portions of Paley's posttrial affidavit are distinctly unhelpful to the plaintiffs, undermining this contention. Paley and the plaintiffs were clearly adversarial parties at trial. As the trial judge has noted, Paley's credibility is properly a matter for the jury to consider.

have favored instead a case-by-case analysis. See, e.g., *Commonwealth* v. *Wolinski*, 431 Mass. 228, 237-238 (2000); *Commonwealth* v. *Cintron*, 435 Mass. 509, 516-518 (2001). This approach has also been taken by the First Circuit. See *United States* v. *Montilla-Rivera, supra* at 1066.[11]

We reject Merrill Lynch's contention that because the trial judge strongly expressed her doubt about the credibility of the Paley evidence, it cannot support the allowance of a new trial. Case law in this Commonwealth acknowledges that posttrial evidence of a witness who did not testify is "the weakest sort of evidence," but the analysis does not end there. See *Commonwealth* v. *Evans*, 439 Mass. 184, 203-204, cert. denied, 540 U.S. 923 and 540 U.S. 973 (2003), citing *Dirring* v. *United States*, 353 F.2d 519, 520 (1st Cir. 1965). Although the trial judge opined that the Paley evidence has "substantial credibility issues," she also found that the evidence nevertheless supports a rule 60(b)(2) motion because it is material, likely to affect the outcome if believed, and admissible. The trial judge was well within her discretion in finding that a jury may consider the evidence, weigh its value, and determine the witness's credibility. We uphold the trial judge's determination that, as to the plaintiffs, Paley's testimony was newly discovered under the requirements of rule 60(b)(2).

The second source of evidence considered by the judge in her decision to grant a new trial was an affidavit from attorney David Patterson, who represented a Benistar client not party to the suit. Patterson's affidavit described oral and written communications with one of Benistar's primary brokers at Merrill Lynch during 1998 in which Patterson had explained the nature

---

[11]We likewise disagree with Merrill Lynch's contention that the plaintiffs failed to prove that Paley's testimony was unavailable because they did not request "a judicial ruling on the propriety of Paley's invocation of the Fifth Amendment." Merrill Lynch offers neither support for the assertion that such a ruling is required nor any basis on which Paley's invocation of the Fifth Amendment privilege might have been adjudged inappropriate. In other areas of our case law, we similarly recognize a distinction between the posttrial admissibility of evidence presented by defendants who previously exercised their Fifth Amendment privilege during trial (thereby controlling their own "unavailability") and that presented by other parties. Compare *Commonwealth* v. *Ortiz*, 393 Mass. 523, 529-530 (1984), with *Commonwealth* v. *Labelle*, 67 Mass. App. Ct. 698, 701 (2006).

and limitations of the Benistar-client relationship. Patterson's affidavit specifically described a cover letter that he had mailed and faxed to the Merrill Lynch broker, to which Patterson had attached copies of Benistar-client agreements. Merrill Lynch argued that the Patterson evidence could not support the grant of a new trial because a copy of Patterson's cover letter, albeit without the enclosed agreements, had been produced to the plaintiffs during pretrial discovery.[12] In considering the exercise of due diligence required by the language of rule 60(b)(2), the judge specifically noted that the plaintiffs sent pretrial document requests to the defendants — including, notably, Merrill Lynch — "that squarely covered this type of correspondence." See *Kettenbach* v. *Demoulas*, 901 F. Supp. 486, 495 (D. Mass. 1995) ("failure to pursue discovery to the utmost limit does not preclude a successful Rule 60[b][2] motion"), citing *Krock* v. *Electric Motor & Repair Co.*, 339 F.2d 73, 74-75 (1st Cir.) (failing to make full use of discovery does not require a finding of lack of due diligence), cert. denied, 377 U.S. 934 (1964).

We conclude that the pretrial failure of plaintiffs' counsel to follow the clear signposts provided by the Patterson letter materially detracts from what would otherwise be a textbook example of evidence — found by the judge to be "specific," "credible," and corroborated by other contemporaneous evidence —entitling the applicant to a new trial. Pretrial possession of the Patterson letter, simply stated, means that the evidence to which it leads could have been obtained under the "due diligence" strictures of rule 60(b)(2), and cannot therefore now be considered "newly discovered" within the meaning of the rule.

However, the judge properly exercised her discretion in concluding that the Paley evidence was sufficient, standing alone, to support the grant of a new trial. The Paley evidence is material to the issue of Merrill Lynch's actual contemporaneous knowledge of Benistar's wrongdoing. It very likely would have

---

[12]In keeping with the tangled nature of the web woven below, this letter was never produced by Merrill Lynch, to whom it had been addressed and sent, and from whom production could properly have been expected. Instead it was produced by the defendant Paley — the very party whose credibility is now attacked by Merrill Lynch on appeal.

produced a different result, since the judge could not properly have granted a judgment n.o.v. if Paley had testified.[13] See *Wojcicki* v. *Caragher*, 447 Mass. 200, 215 (2006) (new evidence must be material in sense that it would likely affect result). We therefore affirm the judge's order granting a new trial on the claims against Merrill Lynch.

*Appeal of the Benistar defendants.*[14] 1. *The challenge to personal jurisdiction.* In general, personal jurisdiction is properly exercised over any defendant in connection with the transacting of any business in the Commonwealth (directly or through an agent) or over a defendant who causes "tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." G. L. c. 223A, § 3(*a*), (*d*), as amended by St. 1969, c. 623.

It does not avail the individual defendants Molly and Daniel Carpenter to assert that "jurisdiction over a corporation does not automatically secure jurisdiction over its officers," *Kleinerman* v. *Morse*, 26 Mass. App. Ct. 819, 824 (1989), and that Massachusetts "adheres to the general rule that jurisdiction over an officer cannot be based solely on jurisdiction over the corporation, [and] it must be based on acts of the officer themselves, rather than simply the corporation, within the forum state." *Nahigian* v. *Leonard*, 233 F. Supp. 2d 151, 157 n.1 (D. Mass. 2002). The record supports the judge's findings of significant contacts and substantial activities in Massachusetts by both Carpenters, including activities related to the claims asserted by the plaintiffs, see G. L. c. 223A, § 3(*a*), (*d*), and the arguments to the contrary are without merit. The Carpenters' activities in Massachusetts were sufficient to establish minimum contacts such that "traditional notions of fair play and substantial justice" were not

---

[13]Other than that which was introduced posttrial, the record contains no evidence that Merrill Lynch had actual knowledge of any restrictions imposed on Benistar's use of the plaintiffs' funds. Accordingly, we conclude that the judge was correct in granting judgment n.o.v. in favor of Merrill Lynch.

[14]The "Benistar defendants" are Benistar; Daniel and Molly Carpenter; Benistar Ltd.; Benistar Admin. Services, Inc.; Benistar Employer Services Trust Corporation; and Carpenter Financial Group, LLC.

offended. See *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945), quoting from *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940).

We likewise discern no error in the judge's thorough analysis of personal jurisdiction over the Benistar corporate defendants. The plaintiffs' theory of personal jurisdiction was necessarily intertwined with the merits of their claim that corporate disregard was appropriate in this case. The judge considered and discussed the factors relevant to determining whether corporate formalities may be set aside. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614 (1968); *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 733 (1991).[15] With ample evidence to support her decision, she rightly concluded that corporate disregard was proper.

Put simply, the actions of the corporations consisted of the actions of the Carpenters and of Benistar. Because piercing the corporate veil was appropriate in this case,[16] and because the actors beneath the veil had ample minimum contacts with the forum State, we affirm the trial judge's findings that the plaintiffs proved the jurisdictional requirements were met as to all the Benistar corporate defendants.

*2. Benistar motions for a new trial.* The Benistar defendants complain that shortly after the jurors were discharged, two

---

[15]Specifically, she found that the corporations were commonly owned by the Carpenters, who had pervasive control over all of their activities; that the business activities, assets, and management of the organizations were intermingled; that the corporations were inadequately capitalized; that corporate formalities were not observed; that no corporate records existed; that no dividends were paid; that Benistar was insolvent; that no officers or directors of any of these corporations existed apart from the Carpenters; that Benistar's funds were used by Daniel Carpenter to carry out "his personal penchant for risky option trading on the stock market"; and that the corporations were used to promote fraud. We note that Benistar did not challenge the exercise of personal jurisdiction over it.

[16]The judge correctly applied Massachusetts law to the veil-piercing claims. The various Benistar affiliates (all Delaware corporations) assert correctly that the law of the State of incorporation is generally applied to internal corporate affairs. See *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 471 (2001); *Clemmer* v. *Cullinane*, 62 Mass. App. Ct. 904, 905 (2004). However, this case involves not questions of internal governance, but rather the effect of corporate actions in Massachusetts and on Massachusetts citizens. See *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. at 737 n.7.

jurors invited plaintiffs' counsel out for "some beers." Counsel firmly, and appropriately, declined the invitations. Even if the jurors' actions were inappropriate, they did not amount to an indication that the verdict was the product of bias or prejudice. The judge rejected the request of the Benistar defendants for an evidentiary hearing or new trial based on the alleged misconduct. There was no error or abuse of discretion. No evidence was submitted that jury misconduct, as our case law explains that term, took place. See *Commonwealth* v. *Royster*, 15 Mass. App. Ct. 970, 970-971 (1983).

The Benistar defendants also argue that the judge erred in denying them a new trial based on the newly discovered Paley evidence. Again, we review a grant or denial of a motion for new trial under rule 60(b) for abuse of discretion. See *Wojcicki* v. *Caragher*, 447 Mass. at 209; *Tai* v. *Boston*, 45 Mass. App. Ct. at 224.

In contrast to the case against Merrill Lynch, the proffered newly discovered evidence does not satisfy the requirement that it will likely affect the outcome of a trial against the Benistar defendants. See Mass.R.Civ.P. 60(b)(2); *DeLuca* v. *Boston Elev. Ry.*, 312 Mass. 495, 497 (1942); *Wojcicki* v. *Caragher, supra* at 215. The overwhelming evidence in favor of the plaintiffs leaves this element of rule 60(b)(2) unmet. We affirm the judge's order denying a new trial for the Benistar defendants.

3. *Assignment of cause of action to plaintiffs.* Benistar complains that the judge was without authority, after entering judgment for the plaintiffs, to reach and apply any cause of action Benistar has against PaineWebber to the plaintiffs. We disagree. General Laws c. 223, § 86A, as amended through St. 2000, c. 159, § 278, provides for precisely such relief "[u]pon motion of the plaintiff at any time after entry of a judgment in his favor in the . . . superior court . . . but before the expiration of the time to appeal therefrom or, if an appeal is claimed, during the pendency thereof."[17] A cause of action is a "valuable interest vested in [the defendant] which can be reached and applied

---

[17]Section 86A further specifies that the court shall have jurisdiction "to cause to be reached, held, and thereafter applied . . . the same kind of property, right, title or interest, legal or equitable," as may be reached and applied under G. L. c. 214, § 3(6) and (7). These include "any right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the

in a creditor's suit." *Digney* v. *Blanchard*, 229 Mass. 235, 239 (1918). Nor did the judge abuse her discretion by providing safeguards, such as giving the plaintiffs control over the prosecution of the cause of action, to protect the value of the claim. Authority relied upon by the Benistar defendants is not to the contrary, merely prohibiting execution on security prior to a final judgment. See *Alper* v. *MacPherson*, 318 Mass. 433, 435 (1945). See also G. L. c. 231, § 115. Where equitable relief is appropriate, its scope is left to the discretion of the trial judge. See *Borne* v. *Haverhill Golf & Country Club, Inc.*, 58 Mass. App. Ct. 306, 323 (2003), citing *Commonwealth* v. *Adams*, 416 Mass. 558, 566 (1993).

4. *Benistar defendants' remaining contentions.* The Benistar defendants make a number of other arguments on appeal in support of vacating the judgment against them. Specifically, they argue that summary judgment was erroneously granted to the plaintiffs on their claims of conversion. In addition, the Benistar defendants argue that insufficient evidence existed to support a jury finding of a fiduciary relationship between Benistar and its clients, or to support a finding of fraud.

a. *Conversion.* Conversion consists of a wrongful exercise of dominion or control over the personal property of another. See *Third Natl. Bank of Hampden County* v. *Continental Ins. Co.*, 388 Mass. 240, 244 (1983). See also *Spooner* v. *Manchester*, 133 Mass. 270, 274 (1882). On an appeal from a grant of summary judgment, we review the evidence in the light most favorable to the nonmoving party to determine whether all material facts have been established and whether the plaintiffs were entitled to a judgment as a matter of law. See *Nelson* v. *Salem State College*, 446 Mass. 525, 530 (2006). The record fully supports the judge's conclusions. The Benistar-client agreements transferred the plaintiffs' control over their sale proceeds to Benistar, with a time limit on that control and restrictions on the use of those funds during the time of Benistar's possession. Benistar not only exceeded its authorization but also seriously violated the right of

property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached and applied until a future time or is of uncertain value." G. L. c. 214, § 3(6), inserted by St. 1973, c. 1114, § 62.

the plaintiffs to control their property. The unauthorized use in this case was sufficiently serious to amount to conversion. See *McGonigle* v. *Victor H. J. Belleisle Co.*, 186 Mass. 310, 312-313 (1904); Prosser & Keeton, Torts § 15, at 94 (5th ed. 1984).[18] See also Restatement (Second) of Torts §§ 227, 228 (1965). In addition, Benistar's failure to remain within the restrictions that defined its authorized use resulted in its inability to comply with the plaintiffs' rightful demand for the return of their funds. See *Abington Natl. Bank* v. *Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 506-507 (1985), citing *Atlantic Fin. Corp.* v. *Galvam*, 311 Mass. 49, 50-51 (1949). The proffered evidence established all elements of the plaintiffs' conversion claims and removed any genuine dispute. The grant of summary judgment to the plaintiffs on their conversion claims was proper.

b. *Breach of fiduciary duty.* We will not disturb the jury finding of breach of fiduciary duty unless there was insufficient evidence presented to the jury to support the finding that a relation of trust and confidence existed. See *Yousif* v. *Yousif*, 61 Mass. App. Ct. 686, 696 (2004), citing *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 444 (1980). Where a plaintiff reposes trust and confidence in the defendant, and the defendant knows of the plaintiff's reliance on him, a fiduciary duty may be created. See *Broomfield* v. *Kosow*, 349 Mass. 749, 754-758 (1965). Compare *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 334-336 (2001) (setting out factors relevant to determining whether a fiduciary duty exists in context of client and broker). The jury heard evidence that Benistar promised to hold client funds in escrow, to safeguard those funds, and to provide the expertise the clients themselves lacked to navigate the process that 26 U.S.C. § 1031 requires. The evidence was sufficient to support a finding of breach of fiduciary duty.[19]

c. *False representations.* Finally, the Benistar defendants

---

[18]Factors to be considered in determining the seriousness of the interference include the extent and duration of the defendant's exercise of control; his intent to assert a right which is in fact inconsistent with the plaintiff's right of control; the defendant's good faith or bad intention; the extent and duration of the resulting interference with the plaintiff's right of control; the harm done to the chattel; and the expense and inconvenience caused to the plaintiff. See Restatement (Second) of Torts § 222A(2) (1965).

[19]The Benistar defendants make additional arguments on the issue of

claim that Daniel Carpenter could not have made false representations to the plaintiffs because, as the plaintiffs testified, they had not met, spoken to, or communicated in writing with him. The jury's finding of misrepresentation is supported by ample evidence in the record that Daniel Carpenter was responsible for promotional material and was intimately involved in Benistar's communications with clients, including the agreements themselves, which represented that funds would be placed in three- and six-percent money market accounts and repaid upon request. His direct personal contact with the plaintiffs was not a requirement for a finding of misrepresentation in this case, and we decline to disturb the jury verdict.[20]

*The grant of summary judgment in favor of PaineWebber.* The plaintiffs challenge the summary judgment on their claims against PaineWebber for aiding and abetting a breach of fiduciary duty and for aiding and abetting conversion. We apply New York law to our consideration of the issues.[21] Again, we view the evidence in a light most favorable to the nonmoving party, here the plaintiffs. PaineWebber came upon the scene in late September, 2002, when Merrill Lynch refused to permit any further options trading by Carpenter. Gary Stern of Merrill Lynch contacted Mitchell Rock, a close friend and broker at PaineWebber, and arranged to transfer three of the Benistar accounts to PaineWebber. Rock was informed that these were corporate accounts and that the funds in the accounts were Benistar corporate funds. The accounts were nondiscretionary, so that Carpenter directed all trades, with Rock implementing them

---

fiduciary duty which we do not take up because they are in the form of conclusory statements, and not appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). For example, we will not consider the unexplained and unsupported "argument" that "the very nature of § 1031 property exchanges precludes a fiduciary relationship."

[20]Similarly, we do not disturb the judge's finding of liability under G. L. c. 93A, which was based on the same evidence as was presented at the jury trial.

[21]The parties had previously agreed, and the judge so ruled in her February 5, 2002, "Memorandum and Order on PaineWebber's Motion to Dismiss," that New York law applied to the plaintiffs' tort claims against PaineWebber, under conflict of laws principles. See Restatement (Second) of Conflict of Laws § 145 (1971). See also *Choate, Hall & Stewart* v. *SCA Servs., Inc.,* 378 Mass. 535, 540-541 (1979); *Cosme* v. *Whitin Mach. Works, Inc.,* 417 Mass. 643, 645-647 (1994).

and also providing investment advice as Carpenter requested. Ninety days later, on December 20, 2002, and after heavy losses, PaineWebber discontinued the options trading and began closing out positions in the Benistar accounts. "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach . . . ." *Kaufman* v. *Cohen*, 307 A.D.2d 113, 125 (N.Y. App. Div. 2003). To satisfy the second element of the claim, the plaintiffs must show that the defendant had actual knowledge of the breach of duty. *Ibid.* Here, the plaintiffs attempt to persuade us that proof of "recklessness or willful blindness" was sufficient to satisfy the requirement of actual knowledge. Under New York law, however, it is well established that recklessness does not satisfy the element of actual knowledge in the context of a claim for aiding and abetting a breach of fiduciary duty. See *Cromer Fin. Ltd.* v. *Berger*, 137 F. Supp. 2d 452, 494 & n.28 (S.D.N.Y. 2001). Proof that a defendant should have known of the prohibited conduct is insufficient; proof of actual knowledge is required. *Kolbeck* v. *LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998).

The facts, viewed in the plaintiffs' favor, at best demonstrated that PaineWebber should have been alerted to the possibility that Carpenter was using client funds for options trading.[22] But proof itself was lacking that PaineWebber had actual knowledge that the Benistar accounts consisted of client funds, and was entirely lacking that PaineWebber knew those funds were subject to restrictions which were being violated. Without any evidence of actual knowledge, the plaintiffs' claims against PaineWebber cannot survive.[23] Accordingly, summary judgment was properly granted in PaineWebber's favor on the aiding and abetting claims.

---

[22]Such evidence included the use of the word "Trust" in Benistar's corporate name, information available on the Benistar Web site, and third-party names listed on wire transfers and on trade confirmations for the Benistar accounts.

[23]The plaintiffs' claims against PaineWebber were additionally unsupported because "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Kaufman* v. *Cohen*, 307 A.D.2d at 126. Here, the record established that Paine-

The plaintiffs' conversion claims fare no better as they, again, rely on the unsupported assertion that PaineWebber had actual knowledge that Carpenter was engaged in prohibited trading with restricted client funds. Thus summary judgment on the plaintiffs' conversion claims was properly granted as well.

*Conclusion.* The orders reported under rule 64(a) are affirmed. The amended judgment under rule 54(b), entered December 6, 2004, is affirmed. The orders pertaining to the assignment to the plaintiffs of Benistar's claims against PaineWebber are affirmed.

*So ordered.*

---

Webber's role was limited to implementing trades in accordance with Carpenter's directions and responding to Carpenter's inquiries for investment advice. Thus the plaintiffs also failed to provide any evidence of substantial assistance to survive summary judgment with respect to the participation element of the aiding and abetting claims.