SUPERIOR COURT 
 
 COLIN BOOTH v. EVAN SMITH, KATHERINE FAULKNER, AND HIGHLAND PARK TECHNOLOGIES, INC.

 
 Docket:
 2484CV01941-BLS2
 
 
 Dates:
 January 10, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING DEFENDANTS’ MOTION TO DISMISS
 
 

 For a time, Colin Booth was in business with and owned or controlled business entities together with Evan Smith. One of their plans was to develop a system of prefabricated insulation panels that could be installed in triple-decker residential housing. Eventually, however, Smith decided to pursue this business opportunity with Katherine Faulkner and stop working on it with Booth. This led to Smith and Faulkner forming a new business entity called Highland Park Technologies to engage in this work.[1]
Booth has sued Smith, Faulkner, and Highland Park. He claims that Faulkner and Highland Park misappropriated trade secrets and engaged in unfair business practices in violation of G.L. c. 93A; that all three defendants are liable for conversion of property, engaging in a civil conspiracy, and on a theory of unjust enrichment; and that Smith breached contractual obligations. Booth also seeks a declaratory judgment that he holds a fifty percent ownership interest in intellectual property being used and marketed by Highland Park.
The Court will allow Defendants’ motion to dismiss all claims against them pursuant to Mass. R. Civ. P. 12(b)(6). Booth lacks standing to assert many of these claims on his own behalf,[2] and in any case the facts alleged by Booth in
 
--------------------------------------------
 
[1] Paragraph 31 of the complaint refers to Highland Park Technologies, LLC, which was registered with the Massachusetts Secretary of State in November 2021. The Court takes judicial notice that the Secretary of State’s corporate database states that this LLC was merged into Highland Park Technologies, Inc., on July 1, 2024. This is presumably why Defendants bring their motion to dismiss on behalf of Highland Park Technologies, Inc.
[2] “A motion to dismiss for lack of standing can be brought under either rule
 
                                                            -1-
 
his complaint do not plausibly suggest that he is entitled to any relief or that he could assert a viable derivative action on behalf of the business entity in which he held an indirect ownership interest.[3] The Court will therefore order that judgment shall enter dismissing Booth’s claims with prejudice.[4]
1. Factual Background. Booth’s complaint in this action includes the following factual allegations or supports the following reasonable inferences.
Booth and  Smith formed  Placetailor Co-Op LLC in 2020; they each owned  50 percent of that company. Placetailor Co-Op created and owned several other entities, including Placetailor Technologies LLC (“PT Tech”). Placetailor Co-Op owns 100 percent of PT Tech.[5]
PT Tech was formed to be a vehicle for research and development concerning a possible prefabricated panel insulation system that would be affordable, easy to install, and specifically tuned to work in triple-decker apartment buildings.
Booth, Smith, and PT Tech began to work with Faulkner and her firm WestFaulkner Architects. In the Fall of 2020, WestFaulkner and Placetailor submitted a joint entry to the “Triple Decker Design Challenge” sponsored by the Massachusetts Clean Energy Center (“MassCEC”). Their retrofit design won a $15,000 prize.
Smith hired an attorney to explore obtaining a patent over triple decker panel technology. The Complaint does not allege that any patent application was ever filed.
 
--------------------------------------------
 
[3] To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint  must make factual allegations that, if true, would “plausibly suggest … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
[4] A dismissal under Rule 12(b)(6) “for failure to state a claim … operates as a dismissal on the merits” and therefore has “res judicata effect.” Saade v. Wilmington Trust, National Ass’n, 494 Mass. 1193, 1194 (2024), quoting Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 731, rev. denied, 423 Mass. 1108 (1996). In other words, a Rule 12(b)(6) dismissal is with prejudice.
[5] The Massachusetts Secretary of State’s corporate database shows that PT Tech was involuntarily dissolved on December 29, 2023, and that Placetailor Co-Op was involuntarily dissolved on December 31, 2024.
 
                                                            -2-
 
In late 2020, Smith and Booth offered to make Faulkner the Director of PT Tech. Though Faulkner rejected that offer, she agreed to continue working with Smith, Booth, and PT Tech.
Faulkner did in fact continue to work with Smith, Booth, and PT Tech into 2021. The Complaint does not allege that Faulkner ever entered into any confidentiality agreement with respect to information that Smith, Booth, or PT Tech shared with her.
In early 2021, PT Tech applied, through the “Catalyst Program” run jointly by MassCEC and MassVentures, for funding to help develop a prototype of the prefabricated insulation panels. Smith and Faulkner were listed as the Principal Investigators on the grant application, and PT Tech was listed as the company that owned any relevant intellectual property. The application was successful, and PT Tech received a grant totaling $65,000 for initial concept testing.
After MassCEC awarded the Catalyst grant to PT Tech, work accelerated on PT Tech’s panel design. Faulkner continued to be involved in this work, and began to express discontent about not having an ownership interest in PT Tech or its parent. Smith and Booth made another offer to Faulkner, but she rejected it.
Booth alleges “that the panel technology being developed by PT Tech” in 2021 “was owned and controlled by PT Tech—not Smith.” Nonetheless, in October 2021, Smith told Booth that he was “going to take PT Tech and the panels” and decide on his own how to involve Faulkner.
In November 2021, Booth and Faulkner made a joint presentation on behalf of PT Tech at a public conference in New York City. During this presentation they discussed Placetailor’s business model and PT Tech’s insulation panel development work.
Faulkner and Smith formed Highland Park at about the same time, also in November 2021. In early January 2022, Faulkner emailed MassCEC and asked to have the remaining Catalyst grant funds transferred to Highland Park. Faulkner represented that “the ownership and leadership are the  same  as  PT Tech.” This was untrue, because Booth had an indirect ownership interest in PT Tech but had no interest in Highland Park. MassCEC agreed to this request.
Highland Park advertises itself as offering “High-Performance Retrofit Panel Systems,” which are very similar to the prefabricated insulation panels that PT Tech had been developing. Booth alleges that Highland Parked is using “PT
 
                                                            -3-
 
Tech’s proprietary panel technology,” without explaining in his complaint what he means by that.
2. Trade Secret Claims. Booth asserts claims for misappropriation of trade secrets against Faulkner and Highland Park under Massachusetts common law and under the Massachusetts Uniform Trade Secrets Act, G.L. c. 93, §§ 42–42G (“MUTSA”). These two claims are “essentially equivalent” because MUTSA “essentially codifies the common law.” See Incase Inc. v. Timex Corp., 488 F.3d 46, 52 n.10 (1st Cir. 2007) (“essentially equivalent”); Burten v. Milton Bradley Co., 763 F.2d 461, 462 (1st Cir. 1985) (“essentially codifies the common law”).
“The essence of an action for the wrongful use of trade secrets is the breach of the duty not to disclose or to use without permission confidential information acquired from another.” Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 165 (1979).
To state a claim for misappropriation of trade secrets, whether at common law or under MUTSA, a plaintiff must allege facts plausibly suggesting that: “1) the information is a trade secret; 2) the plaintiff took reasonable steps to preserve the secrecy of the information; and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret.” See Protégé Software Servs., Inc. v. Colameta, Middlesex civ. action 09-03168, 2012 WL 3030268, at *11 (Mass. Super. July 16, 2012) (Kirpalani, J.) (common law trade secret claim), quoting Incase Inc. v. Timex Corp., 488 F.3d 46, 52 (1st Cir. 2007) (applying Massachusetts law); Neural Magic, Inc. v. Meta Platforms, Inc., 659 F.Supp.3d 138, 158 (D.Mass. 2023) (Casper, J.) (MUTSA claim); accord J. T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736-738 (1970); Peggy Lawton Kitchens, Inc. v. Hogan, 18 Mass. App. Ct. 937, 939 (1984) (rescript).
2.1. No Standing. Booth lacks standing to bring direct claims on his own behalf alleging misappropriation of trade secrets that, according to the allegations in paragraph 25 of the complaint, actually belong to PT Tech.
“As a general rule, a shareholder does not have standing to sue to redress an injury to the corporation in which he holds an interest.” Quarterman v. City of Springfield, 91 Mass. App. Ct. 254, 262, review denied, 477 Mass. 1107 (2017), cert. denied sub nom. City of Springfield, Mass. v. Quarterman, 138 S. Ct. 506 (2017); see also Bessette v. Bessette, 385 Mass. 806 (1982) (affirming dismissal of brought by majority stockholder of close corporation on own behalf that should have been brought as derivative action on behalf of corporation).
 
                                                            -4-
 
“To determine whether a claim belongs to the corporation, and is therefore derivative, ‘a court must inquire whether the shareholders' injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock.’ ” International Bhd. of Elec. Workers Local No. 129 Benefit Fund v. Tucci, 476 Mass. 553, 557–558 (2017), quoting Stegall v. Ladner, 394 F.Supp.2d 358, 364 (D. Mass. 2005) (Woodlock, J.) (applying Massachusetts law).
The Court agrees with Faulkner and Highland Park that the trade secret claims may only be asserted as a derivative action on behalf of PT Tech. Cf. Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg P.C., 405 Mass. 506, 513 (1989) (claim that funds were diverted from corporation for personal use must be asserted through derivative action); Bessette, 385 Mass. at 809–810 (same). Since Booth says that PT Tech owned the alleged trade secrets, any theft or misuse of that property resulted in harm to PT Tech, not to Booth individually. Booth alleges no facts plausibly suggesting that he suffered a distinct injury, not shared by PT Tech, as a result of the alleged misappropriation of trade secrets. Under these circumstances, Booth is “required to file a derivative claim” rather than sue on its own behalf. Fronk v. Fowler, 456 Mass. 317, 333 n.23 (2010) (emphasis in original).
For the reasons discussed below, however, it would be futile for Booth to recast his trade secret claims as being asserted derivatively on behalf of PT Tech.[6]
2.2. No Identified Trade Secret. Though Booth makes the conclusory allegation that Faulkner and Highland Park are using PT Tech’s  “panel technology,” and that the unspecified “PT Panel intellectual property” is a trade secret, the complaint does not explain what Booth means by either of these terms. Booth’s complaint provides no meaningful description of what information or concepts allegedly constitutes a trade secret.
Booth’s failure to identify what trade secrets have allegedly been misappropriated is fatal to these claims.
--------------------------------------------
 
[6] Though Booth holds no ownership interest in PT Tech, his status as a 50 percent owner of PT Tech’s parent would give him standing to assert an otherwise proper claim on PT Tech’s behalf. “[A] shareholder of a parent corporation may bring suit derivatively to enforce the claim of a wholly owned corporate subsidiary, where the subsidiary and its controller parent wrongfully refuse to enforce the subsidiary's claim directly.” Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A., 34 A.3d 1074, 1079 (Del. 2011).
 
                                                            -5-
 
A claim alleging misappropriation of trade secrets “must state with reasonable particularity … the nature of the trade secrets and the basis for the protection.” G.L. c. 93, § 42D(b). The same is true at common law. “A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue.” Sutra, Inc. v. Iceland Exp., ehf, no. 04-11360-DPW, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008) (Woodlock, J.) (applying Massachusetts law), quoting Cambridge Internet Solutions v. Avicon Group, no. 99–1841, 1999 WL 959673, at *2 (Mass. Super. Sept. 21, 1999) (Quinlan, J.). The description must be made “with clarity that can be understood by a lay person ... and distinguish what is protectable from that which is not.” Id., quoting Staffbridge, Inc. v. Gary D. Nelson Assocs., Inc., no. 024912BLS, 2004 WL 1429935, at *4 (Mass. Super. June 11, 2004) (van Gestel, J.).
The conclusory allegations that Faulkner and Highland Park are misusing a “trade secret” do not state a claim. In evaluating the motion to dismiss, the Court must “look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief.” Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers I–95, Inc., 458 Mass. 674, 676 (2011).
“Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.”  Doe  v.  American  Guar.  & Liab.  Co., 91 Mass. App. Ct. 99, 105 (2017), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). “While ‘detailed factual allegations’ are not required at the pleading stage, mere ‘labels and conclusions’ will not survive a motion to dismiss.” Burbank Apartments Tenant Ass’n v. Kargman, 474 Mass. 107, 116 (2016), quoting
Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
During oral argument, Booth argued that the general idea or concept of a modular insulation panel is a trade secret, and that he needs discovery to learn exactly what intellectual property belonging to PT Tech was taken by Faulkner and Highland Park.
Both parts of this argument are unavailing.
First, the facts alleged in the complaint make clear that the concept of a prefabricated, modular insulation panel is not a trade secret. Booth concedes in his complaint alleges that PT Tech disclosed this general idea to MassCEC in its Catalyst Grant application, and that Booth himself discussed this idea in public conferences. The complaint does not allege that MassCEC or anyone
 
                                                            -6-
 
who attended these conferences was sworn to keep secret the general idea of developing modular insulation panels.
“The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.” J. T. Healy & Son v. James A. Murphy & Son, 357 Mass. 728, 736 (1970), quoting Restatement of Torts, § 757, comment b.
Indeed, a claim for misappropriation of trade secrets “lack[s] a reasonable factual basis” where the information at issue “was in the public domain” and “publicly known,” even if it was neither a matter of common knowledge nor widely known throughout an industry. Gillette Co. v. Provost, 91 Mass. App. Ct. 133, 138–139 (2017) (affirming dismissal under anti-SLAPP statute)[7]; accord Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 170 (1991) (company’s annual sales volumes were not “protectible as confidential” because they were “known outside the business” by several securities analysts).
Booth’s allegations that he and PT Tech told others about the idea of developing prefabricated insulation panels therefore establish that this general idea is not a trade secret and that Faulkner and Highland Park are entitled to dismissal of the trade secret claims. “The purpose of rule 12(b)(6) is to permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiff’s claim is legally insufficient.” Harvard Crimson, Inc. v. President and Fellows of Harvard Coll., 445 Mass. 745, 748 (2006). Where a complaint sets out “detailed factual allegations which the plaintiff contends entitle him to relief,” a claim must be dismissed if those allegations “clearly demonstrate that plaintiff does not have a claim.”  Fabrizio v.  City of Quincy,   9 Mass. App. Ct. 733, 734 (1980).
Second, Booth is not entitled to discovery to try to unearth evidence that Faulkner and Highland Park are using some secret intellectual property taken from PT Tech. A civil plaintiff is required to state a viable claim before they may engage in discovery about it. “Discovery cannot be used as a vehicle for discovering a right of action.” See E.A. Miller, Inc. v. South Shore Bank, 405 Mass.
 
--------------------------------------------
 
[7] The information regarding magnetic attachments and elastomeric pivots in razors that the Appeals Court found was in the public domain, and therefore could not be a trade secret, was disclosed in Chinese and United States patents. See Gillette Co. v. Provost, Suffolk Sup. Ct. No. 1585CV00149, “Memorandum and Order on Cross-Motions for Summary Judgment,” slip op. at 4-6, 2017 WL 2292748, at *3–*4 (Mass. Sup. Ct. April 18, 2017) (Salinger, J.).
 
                                                            -7-
 
95, 100 (1989), quoting MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987), and 4 Moore’s Federal Practice ¶ 26.56[1], at 26-95 n.3 (1987).
2.3. No Secrecy or Duty of Confidentiality. There is a third, independent reason why Booth has failed to state a viable claim for trade secret misappropriation: Booth alleges no facts plausibly suggesting that PT Tech took any reasonable steps to keep its alleged trade secrets confidential.
Booth’s conclusory allegations that “reasonable steps were taken to preserve the secrecy of the PT Panel intellectual property,” without more, are insufficient to state a trade secret misappropriation claim. See Sensitech, Inc. v. LimeStone FZE, 581 F.Supp. 342, 350 (D.Mass. 2022) (Gorton, J.); Karter v. Pleasant View Gardens, Inc., 248 F.Supp.3d 299, 312–313 (D.Mass. 2017) (Zobel, J.).
To the extent that Booth claims Faulkner made off with intellectual property that was shared with her while she was working with PT Tech, these claims fail because the complaint does not allege that Faulkner entered into any confidentiality agreement or otherwise contracted to protect the secrecy of or to limit her use of any information she learned while doing that work.
Similarly, to the extent that Booth claims that Smith or a former PT Tech employee brought intellectual property with them from PT Tech to Highland Park, these claims fail because the complaint does not allege that Smith or PT Tech employees had confidentiality agreements or were otherwise bound to keep relevant information confidential. If a third party (like Faulkner or Highland Park in this case) knowingly benefits from a trade secret that was improperly disclosed by someone who obtained it from the plaintiff “subject to an understanding of confidentiality,” the third party may be held liable for misappropriation of a trade secret. See Curtiss–Wright Corp. v. Edel–Brown Tool & Die Co., 381 Mass. 1, 3 n. 2 (1980). To state such a claim, however, a plaintiff must allege facts plausibly suggesting that the third party knew or should have known that the information it obtained and used was a trade secret, and also that the party from whom it obtained the information had a duty not to disclose it. Id. at 5–6 & n.4. Booth has not done so.
3. Conversion Claims. Booth’s claims for conversion of property fail for similar reasons.
“Conversion is the ‘wrongful exercise of dominion or control over the personal property of another.’ ” Waxman v. Waxman, 84 Mass. App. Ct. 314, 321 (2013), quoting Cahaly v. Benistar Property Exch. Trust Co., 68 Mass. App. Ct. 668, 679
 
                                                            -8-
 
(2007). Conversion can be proved either by showing wrongful acquisition of property or by showing a wrongful refusal to return the property upon demand. Id.
Booth claims that all three defendants took and converted “intellectual property concerning the PT Panels.”
As discussed above, Booth lacks standing to assert these claims because the alleged intellectual property belonged to PT Tech.
Furthermore, Booth’s conclusory assertions that defendants converted intellectual property do not state a claim in the absence of factual allegations identifying what intellectual property was at issue and plausibly suggesting that it belonged to PT Tech. As discussed above, defendants cannot be held liable for making use of the general concept of prefabricated, modular insulation panels, because that general idea is in the public domain. And the complaint does not identify any other property that allegedly was converted.
During oral argument, Booth asserted for the first time that his allegation that Faulkner and Smith improperly convinced MassCEC to transfer the balance of its grant to Highland Park also constitutes conversion. That argument fails because Booth alleges no facts plausibly suggesting that PT Tech had any property interest in receiving the balance of the grant funds. “Conversion occurs only when a defendant exercises wrongful control over specific personal property, not a debt.” Gossels v. Fleet Nat. Bank, 453 Mass. 366, 372 (2009). By analogy, because a bank and its account holders “have only a debtor-creditor relationship,” and the account holder has no right to any specific funds, “bank accounts cannot be the subject of conversion.” Id. Similarly, since nothing in the complaint suggests that MassCEC gave PT Tech an enforceable right in specific personal property, transfer of the grant balance could not constitute conversion.
4. Unjust Enrichment Claim. Booth’s claim for unjust enrichment against Smith, Faulkner, and Highland Park adds nothing to his trade secret claims.
To state a claim for unjust enrichment, Booth must allege facts plausibly suggesting that these defendants obtained a valuable benefit from Booth that was not covered by a contractual agreement, and that they accepted or retained the benefit under circumstances where it would be unfair for them to do so without paying its value to Paul. See National Shawmut Bank of Boston v. Fidelity
 
                                                            -9-
 
Mut. Life Ins. Co., 318 Mass. 142, 145-146 (1945); Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005).
Booth contends that the defendants received an unfair benefit by retaining unspecified “panel technology” without providing Booth with fair compensation for his contributions to that technology. But a conclusory assertion that some sort of “technology” was transferred cannot support a claim for unjust enrichment any more than it can support a trade secret claim. Booth cannot circumvent the requirement that he identify the trade secrets that are at issue by relabeling his trade secret claim as a claim to recoup “unjust enrichment.”
5. Civil Conspiracy Claim. Since Booth’s other tort claims fail, it follows that he has not stated a viable claim for civil conspiracy either.
To state a claim for civil conspiracy on a “concerted action” theory, a plaintiff must allege facts plausibly suggesting “an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass. App. Ct. 372, 383–384 (2011). In other words, this kind of conspiracy claim “is ‘akin to a theory of common law joint liability in tort.’ ” Greene v. Philip Morris USA Inc., 491 Mass. 866, 871 (2023), quoting Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).
For the reasons discussed above, Booth’s trade secret and conversion claims fail to state any claim upon which relief may be granted. Since Booth has not alleged facts plausibly suggesting that any of the defendants committed any “underlying tortious act,” he has not asserted a viable claim for civil conspiracy. See Bartle, supra.
6. Declaratory Judgment Claim. Booth also asserts a claim seeking a declaratory judgment “as to the ownership of the PT Panel intellectual property.”
The Court will dismiss this claim because the facts alleged in Booth’s complaint do not plausibly suggest that there is an actual controversy or that Booth has standing. See generally Alliance, AFSME/SEUI, AFL-CIO, v.  Commonwealth, 425 Mass. 534, 537-539 (1997) (in absence of actual controversy between the parties, claim for declaratory relief under G.L. c. 231A must be dismissed); City of Revere v. Massachusetts Gaming Comm’n, 476 Mass. 591, 607-608 (2017) (affirming dismissal of declaratory judgment claim for lack of standing).
 
                                                            -10-
 
Since the complaint fails to describe or identify the intellectual property that is purportedly at issue here, as discussed above, Booth has failed to allege facts plausibly suggesting that any actual controversy needs resolving.
In any case, since Booth expressly alleges that any intellectual property at issue here belongs to PT Tech, he lacks standing to seek a declaration stating that nonetheless he personally holds a 50 percent ownership interest.
7. Claim under G.L. c. 93A. Booth also lacks standing to press his claim under G.L. c. 93A. Booth contends that Faulkner and Highland Technologies engaged in unfair or deceptive conduct by converting PT Tech’s intellectual property and by convincing MassCEC to transfer the balance of PT Tech’s grant award. For the reasons discussed above, Booth may assert such a claim only by bringing a derivative action on behalf of PT Tech. But it would be futile for Booth to do so.
Since Booth’s underlying trade secret and conversion claims fail as a matter of law, his 93A claim also fails to the extent that it is also based on alleged taking or conversion of intellectual property. See, e.g., Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 85–86 (2004) (where c. 93A claim is based on and derivative of some underlying claim that fails as a matter of law, that 93A claim “must also fail”); Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 760, rev. denied, 423 Mass. 1109 (1996) ©. 93A claim “necessarily fail[s]” where it “is solely based upon … underlying claim for common law” tort and that tort claim fails as a matter of law).
To the extent that the 93A claim is based on the allegation that Faulkner wrongly convinced MassCEC to transfer the balance of its grant to Highland Park, the claim fails because the facts alleged do not plausibly suggest that Faulkner or Highland Park was acting in a business context.
To state a viable claim under G.L. c. 93A, a plaintiff must allege facts plausibly suggesting that the defendant engaged in “unfair or deceptive acts or practices ‘in the conduct of any trade or commerce.’ ” Office One, Inc. v. Lopez, 437 Mass. 113, 125 (2002), quoting G.L. c. 93A, § 2. That is true whether a claim is asserted by an individual consumer under § 9 or by a business under § 11. See Frullo v. Landenberger, 61 Mass. App. Ct. 814, 821 (2004). “Engaging in trade or commerce means ‘acting in a business context.’ ” Id., quoting Lantner v. Carson, 374 Mass. 606, 611 (1978); accord Feeney v. Dell Inc., 454 Mass. 192, 212 (2009).
 
                                                            -11-
 
Nothing alleged in the complaint suggests that Faulkner was acting in a business context when she asked MassCEC to transfer the balance of its grant to Highland Park, or that Highland Park was acting in a business context when it received and used the grant balance. MassCEC is a quasi-public entity created by statute to perform an “essential governmental function.” See G.L. c. 23J, § 2(a). It is authorized to make grants only “to advance the public purpose and public interests” established by statute, id. § 15(c), including by supporting “clean energy research and technology” and “research and development in the clean energy industry,” id. § 15(b)(I) and (vii). Booth has not alleged any facts suggesting that Faulkner’s or Highland Park’s involvement in the MassCEC grant program constituted the conduct of trade or commerce.
8. Contract Claims. Booth’s contract claim against Smith fails at the threshold, because the facts alleged in the complaint do not plausibly suggest that Booth and Smith entered into an enforceable contract.[8] Count IV includes the conclusory assertion that “[a]n agreement existed between Smith and Booth in which each was promised a 50% ownership interest in all intellectual property developed by PT Tech.” But the complaint neither identifies any written contract nor alleges any facts suggesting that Booth and Smooth entered into an enforceable oral contract. The unexplained assertion that Booth and Smith entered into a contract is not enough to state a claim. See generally Maling, 473 Mass. at 339.
In any case, Booth has not alleged any facts plausibly suggesting that Smith breached the alleged contract. Booth asserts that Smith breached the purported contract “[b]y taking the panel intellectual property as his own.” As discussed above, however, the complaint alleges no facts plausibly suggesting that Smith took any intellectual property that belonged to PT Tech or to Booth.
Booth’s separate claim for breach of the implied covenant of good faith and fair dealing adds nothing to his other contract claim.
 
--------------------------------------------
 
[8] To state a claim for breach of contract, Booth must allege facts plausibly suggesting that: (I) he entered into a valid and enforceable contract with Smith; (ii) Booth substantially performed its obligations under the contract or was ready, willing, and able to do so; (iii) Smith breached the contract; and (iv) Booth was damaged as a result. See, e.g., 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (2019).
 
                                                            -12-
 
Since Booth alleges no facts plausibly suggesting that he entered into an enforceable contract with Smith, he cannot assert a claim for breach of the implied covenant of good faith and fair dealing contained in that alleged contract. Curtis v. Herb Chambers I-95, Inc., 75 Mass. App. Ct. 662, 670 (2009), aff’d in relevant part and rev’d in part, 458 Mass. 674, 680 n.10 (2011); Miller v. Milton Hosp. & Med. Ctr., 54 Mass. App. Ct. 495, 498 n.6 (2002). Where there is no contract, there is no implied covenant that could be breached. See, e.g., Guldseth v. Family Medicine Assocs. LLC, 45 F.4th 526, 538 (1st Cir. 2022) (“the covenant governs only conduct of parties that have actually entered into a contract – without a contract, there is no covenant to be breached”) (applying Massachusetts law).
Furthermore, since the complaint alleges no facts suggesting that Smith made off with intellectual property that belonged to PT Tech or Booth, it does not state a viable claim that he breached the implied covenant by doing so.
ORDER
Defendants’ motion to dismiss all claims against them pursuant to Mass. R. Civ. P. 12(b)(6) is allowed. Final judgment shall enter dismissing this action with prejudice and providing that Plaintiff shall take nothing from any of the defendants.