NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-152

CARE AND PROTECTION OF ZIMMER.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and the father appeal from a decision of the Juvenile Court in this care and protection case finding them currently unfit as of the time of trial and awarding the Department of Children and Families (DCF or department), which before trial had temporary custody of their child, permanent custody. The appeal does not involve the termination of parental rights, so the judge did not determine that the parents' unfitness was likely to extend indefinitely into the future. The judge also agreed with the parents that the department had not made the statutorily-required reasonable efforts toward reunification of the family.

---

[1] A pseudonym. In order to ensure privacy, we use only descriptive words for the parties (i.e., mother, father, child) rather than their names.

When the decision was issued, it was accompanied only by a two-page opinion. Months after the trial, the trial judge issued detailed findings of fact and conclusions of law. Although the parents are correct that this decision contains some findings supported by unadmitted posttrial evidence which cannot properly be used to justify the judgment, we nonetheless conclude that the judge's error in relying on that evidence ultimately was immaterial to the decision made by the judge. There is clear and convincing evidence of the parents' current unfitness at the time of trial, even after excising the improperly-relied-upon findings of fact. See Adoption of Luc, 484 Mass. 139, 148 (2020). Finally, although the judge found that the department failed to engage in reasonable efforts toward reunification, we conclude she did not abuse her discretion by not entering a specific remedial order. We thus affirm.

Background. The facts of the case are well known to the parties. They will not be repeated here except as necessary.

This case commenced on November 2, 2022, when the then five year old child opened the door to his home in Chelsea to a utility service worker, who discovered that the child was home alone and unattended. The mother reported that she was working on Cape Cod and was on her way back. The father had separated from the mother about a week before and was not involved in the

2

child's life at the time.  A mandated reporter filed a report pursuant to G. L. c. 119, § 51A (51A report), which was screened in for an emergency response.

During the department's investigation, the child disclosed that he was frequently left at home with no one to watch him. His pediatrician disclosed that the child had not received recommended medical care and had not been seen by the pediatrician for over eighteen months at the time the department filed the care and protection petition, and that the mother had failed to attend multiple pediatric appointments, including four appointments in 2022.  The department discovered that the child was not in school due to missing immunization records, although he was old enough for kindergarten.  The mother had previous involvements with the department with two of her five children due to 51A reports alleging she had committed domestic violence against them that DCF found supported.

DCF obtained custody of the child on the same day he was found home and unattended, and retained custody since then.  DCF filed a care and protection petition pursuant to G. L. c. 119, § 24, the next day, November 3, 2022.

The department held a six-week review on February 3, 2023. The mother had failed to engage in any services during the prior six weeks, stating that she needed to work to provide for the family.  In August 2023, in discussions with the department, the

3

mother maintained that she had done nothing wrong and that the child should be returned home to her.  She stated that she left the child in the care of her older son.  The department told her that the older son was not an appropriate caretaker because of significant mental health concerns for which he was receiving services through the department.

The mother's action plan included the following tasks: participate in family stabilization services, attend family therapy sessions, participate in Parenting Journey classes, participate in a parenting capacity evaluation, and engage in domestic violence services.  The judge found that DCF failed to provide the mother with an action plan in Spanish until after the first foster care review.

The mother complied with some of the tasks on her action plan but was not consistent in attending visitation or family therapy sessions.  The mother had a full-time job with a private employer, painting bridges for the Commonwealth.  Her working there often caused her not to ensure proper supervision of, or attention to services for, her child.

The department changed its permanency goal for the child to adoption on February 29, 2024, citing the mother's lack of insight and partial engagement with the action plan.  During a May 21, 2024, foster care review, the panel found that the department had not completed the necessary steps to address the

4

needs of the family and recommended the permanency goal be changed to reunification. However, during the July, 2024, permanency planning conference, the clinical team reviewed DCF's permanency goal and maintained the goal of adoption.

The father resided with the mother from the child's birth in 2016 to around a week before the removal, when he separated from the mother. The mother had previously obtained a restraining order against the father in 2020 after the father made threats against her. In November 2022, the same month of removal, the father moved to Maryland, where he remained until November 2023, when he returned to Massachusetts. At the time of trial, he had subsequently visited with the child twice. The father did not seek reunification with the child at trial, but supported the child's reunification with the mother.

Meanwhile, the child was placed by the department in thirteen different substitute care settings over seven months, at which he exhibited challenging behaviors including tantrums and sexualized behaviors. The child was placed at Walker Therapeutic & Education Programs (Walker), the thirteenth placement, in June 2023, and was diagnosed with adjustment disorder. The child was ready for discharge at the end of the 2024 school year but remained at Walker at the time of trial. The child's position at trial, as here, was that he wants to be reunified with the mother.

Trial on this matter began on July 29, 2024, and continued for three nonconsecutive days. At trial, the mother first testified that the child was removed because of a "lie" that her children had told. She said she believed that the father counseled her children to lie and to state that she hit them. She alleged that she left the child with a family friend on the day of his removal but could not state who that was. She then testified in contradiction that she left the child in the care of her older son. After much direction, the mother finally testified that the child was removed because she left him home alone while she was at work.

The judge found as a fact that the mother's ongoing vacillation as to what transpired that day -- and her disregard of the department's concern about the older son supervising the child -- demonstrated a lack of insight into her actions and the risk of harm to the child on that day.

The judge noted that the mother had demonstrated an inability to arrive on time for visits or therapy sessions. Although the judge deemed visitation overall to have gone well, at some visits the mother took phone calls or attended to work. When she was on leave from work, she nonetheless failed to attend five scheduled medical and/or dental appointments for the child. The judge found that the mother did not understand why the child was in therapy, but did not credit her testimony that

she had never been told the reason by the department. The judge acknowledged that the mother had completed many of the tasks on her action plan but also found that, at least at the time of trial, the child remained at risk of harm should he be left home alone for any significant period and still required mental health intervention.

The judge essentially concluded that the mother lacked insight into, and failed to take accountability for, leaving her child alone, she incorrectly believed her obligation was simply to work and provide physical sustenance for her family, and did not consider that it was not in the child's best interests to be left alone and unattended in the home. The judge concluded that "Mother does not prioritize [the child] and his needs as much as she does her work." The judge found her currently unfit.

The judge also found that the father had little to no involvement during the pendency of this action and did not visit with his child until at least a year after his removal. Nor had he maintained any substantial level of contact with the department throughout the pendency of the action. The judge found the father currently unfit.

Meanwhile, the judge ruled that DCF had failed to make reasonable efforts toward reunification of the family, and she concluded that the department failed in its responsibility to

7

identify an appropriate setting for the child after discharge from Walker.

Discussion. On appeal, the mother and the father challenge the findings of current unfitness. A finding of unfitness must be supported by clear and convincing evidence, but a judge's subsidiary findings will be disturbed only if clearly erroneous. See Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed'" (citation omitted). Custody of Eleanor, 414 Mass. 795, 799 (1993).

The mother and the father also challenge the failure of the judge to order DCF to engage in any specific remedial efforts, based on her conclusion about reasonable efforts. A judge has the equitable authority to order the department to take reasonable remedial steps where the judge finds the department "failed to fulfil its duty to make reasonable efforts" (citation omitted). Care & Protection of Rashida, 488 Mass. 217, 234 n.25 (2021). We review the lack of a remedial order by the judge for abuse of discretion. See Care & Protection of Walt, 478 Mass. 212, 230 (2017).

1.  The father's unfitness.  The father argues that the trial judge erred in finding him unfit.  He contends that even though he had separated with the mother before the removal and subsequently moved to Maryland, the judge made a clear error in finding he lacked involvement in the child's life.

The father lists instances of communicating with DCF to promote reunification with the mother and his visitation with the child upon returning to Massachusetts.  The father also argues that DCF never considered, after the removal, the option of placing the child with the father to reside in Maryland.  But the father's recitation in detail of his interactions with DCF and the child do not demonstrate that the judge's finding was clearly erroneous.  See Adoption of Don, 435 Mass. 158, 166-167 (2001).  Indeed, he does not contest any of the subsidiary factual findings made by the judge, including the finding that he only began meeting with the department in October 2023, nearly a year after the removal, and thereafter the father did not make himself consistently available to the department.  We see no clear error in the judge's findings and no error in the judge's conclusion that clear and convincing evidence demonstrates the father was, at the time of trial, currently unfit.

2.  The mother's unfitness.  Both the mother and the father challenge factual findings made by the judge related to the mother's unfitness.

a.  Stale and cherry-picked facts.  First, the mother argues that some findings are based on stale evidence and "seemingly cherrypicked" isolated events in the past.  According to the mother, these findings include mother:

- Leaving the child home alone once in November 2022, which gave rise to the petition;

- Being difficult to direct during a February 2023 six-week case review;

- Maintaining she did nothing wrong in August 2023;

- Missing or being late to five family therapy sessions between July 2023, and May 2024;

- Missing three home visits between November 2022, and January 2024;

- Missing a weekly visit with the child at the DCF area office in January 2023;

- Not interacting with the child during two visits at the DCF area office in December 2022, and January 2023;

- Missing, canceling or being late to twelve weekly visits at Walker between August 2023, and May 2024;

- Telling the social worker to keep the child following a November 2023 foster care review; and

- Not attending the child's medical appointments between December 2023, and February 2024.

These facts certainly include ones from years prior to the trial, but the judge properly relied on them to make her

10

findings.  Although courts cannot rely on stale information to determine current fitness, the Supreme Judicial Court has recognized that certain prior history can have "prognostic value."  Adoption of Don, 435 Mass. at 166, quoting Adoption of George, 27 Mass. App. Ct. 265, 268 (1989).  Instead of being stale or isolated facts, the past events cited by the judge are indeed probative of the mother's current unfitness in that they demonstrate her lack of insight into the reason for the child's removal and her inconsistent engagement with DCF and her DCF action plan.

b.  Clearly erroneous facts.  The mother also seeks to challenge findings of fact numbers 20(b) and 20(e) as clearly erroneous.  The judge found in 20(b) that DCF provided the mother with the child's new Spanish-speaking clinician's contact information, and in 20(e) that "Mother refused to engage in any [individual] mental health services" at North Suffolk and Latino CART.

The mother contends that with respect to finding number 20(b), the social worker testified on the last day of trial that she gave the mother the name of the clinician during their last meeting, but she had not given the mother the clinician's telephone number yet, which she acknowledged was her responsibility.

11

As to finding number 20(e), the mother argues that individual mental health services were not part of her action plan.  This thus is a claim not so much that the finding is clearly erroneous as that it is immaterial.

Nonetheless, assuming these two findings were in error, they were irrelevant to the judge's final conclusion about the mother's fitness, her lack of insight into the dangers facing the child when she left him unattended, or the child's need for therapy.

c.  <u>Unadmitted evidence</u>.  Finally, the mother is correct that the judge should not have relied in her findings of fact and conclusions of law upon a December 17, 2024, postjudgment status report.  That status report was issued subsequent to trial as a result of the order of the judge that also found a failure to make reasonable efforts towards reunification on the part of the department.

Throughout the judge's decision, she cited, without identifying it, "Pet. Ex. 22."  There were, however, only twenty-one exhibits introduced at trial by DCF.  The department identifies exhibit 22 as "the [December 2024] status report," and we may assume that that is correct.

This report not only was not admitted at trial, it was not created until months after the end of the trial and the entry of judgment, and it describes events occurring after trial.  A

12

court may not consider items not in evidence in reaching its decision. Care & Protection of Frank, 409 Mass. 492, 499 (1991). A report created after judgment entered cannot properly be used to support the entry of that judgment. Likewise, the use of any unadmitted evidence deprives the opposing party of the opportunity to litigate its admissibility or to challenge the substance through cross-examination or calling witnesses. See Custody of Two Minors, 19 Mass. App. Ct. 552, 556-557 (1985). Consequently, the status report cannot be used to support any of the findings made by the judge, and should not have been utilized by the judge in making her findings of fact and conclusions of law.

We have parsed each of the findings with respect to which the judge cited exhibit 22 in support. Some of the facts found in the judge's decision that are supported by the status report, though improperly included, are favorable to the mother or the father, or are at least neutral and therefore could not be prejudicial. For example, finding number 20(a)(ii) describes the mother attending family therapy sessions on dates after the trial. Finding number 21 appears to refer to a positive postjudgment family visit between the mother and the child that included the child's sister. The first paragraph of finding number 20 describes the apparent delayed receipt by the mother of an action plan in Spanish, which could be characterized as

13

neutral. Meanwhile, findings numbers 44, 45, and 46 describe treatment received by the child and sought by DCF after judgment. These, too, though like all the others improper, might be considered neutral.

But most of the findings that cite exhibit 22 for support are negative: exhibit 22 is cited in support of finding number 20(b), that the mother did not understand why the child was in therapy and claimed she had never been told the reason. Finding number 20(e) talks about the mother's refusal to engage in mental health services. Finding number 21(iv) includes among a list of missed visits, one postjudgment missed visit described in the status report. Finding number 21(v) describes the mother unilaterally extending a posttrial visit, being confronted by Walker staff, becoming agitated in front of the child, subsequently being relegated to supervised visits, and behaving inappropriately at a meeting to discuss the matter with DCF. And finding number 21(vi) describes the mother bringing the father to a postjudgment visit without approval.

Finding number 34, 35, and 36 describe posttrial and postjudgment interactions between DCF and the father, describing the difficulty the department had contacting him, his finally scheduling a home visit, and then his not appearing and the home visit taking place later. These findings conclude that the

14

father has had inconsistent contact with the child and has not made himself consistently available to the department.

None of these facts can have played any role in the judgment, and they cannot play any role in justifying it.  The judge's inclusion of them in her findings of fact and conclusions of law was erroneous.

Nonetheless, even without these erroneously included findings, the judge's conclusion of unfitness, and her reasons for that conclusion, had "clear and convincing evidentiary support."  See Care & Protection of Olga, 57 Mass. App. Ct. 821, 824-825 (2003).  The findings are in essence add-ons to the otherwise clear and convincing evidence properly admitted at trial about then-current shortcomings of the mother and the father at the time of trial -— essentially the mother's lack of insight into what was in the best interests of the child, and, due to that lack of insight, her inability to provide a safe and adequate home for the child at the time of trial, and with respect to the father, his lack of involvement with the child. They are thus essentially insubstantial additional evidence in addition to the clear and convincing, properly-admitted evidence of the parents' current unfitness at the time of trial. Consequently, as in Care & Protection of Olga, supra, we affirm the determination of current unfitness with no need for a remand for further proceedings.  See Adoption of Luc, 484 Mass. at 148

15

(even after excising thirty-one contested findings of fact, there was clear and convincing evidence supporting decree).

3.  <u>Lack of reasonable efforts and remedy</u>.  Of significance, as this was not a case terminating parental rights, and as the judge's findings and conclusions could not have supported termination had it been sought, the judge concluded that the department had failed to make reasonable efforts to reunify the family.  Indeed, the department's efforts produced thirteen different placements over the course of seven months, each of which disrupted.  We think a reasonable question may be raised by the record about whether some of the child's behavioral problems were the result of events in these placements.

The department does not contest the finding that it failed to make reasonable efforts.  But both the mother and the father argue that the Juvenile Court judge abused her discretion by not exercising the court's equitable power to order specific remedial measures to address this finding.  However, neither the mother nor the father is asking this court to order entry of any specific remedial order.

To begin with, we think that this argument is waived, as the mother and the father did not request any such remedial order in the trial court.  Although Juvenile Court judges may sua sponte exercise their equitable authority to order remedial

16

efforts, they are not required to do so.  Cf. Commonwealth v. Adams, 416 Mass. 558, 566 (1993).

In any event, we do not see any abuse of discretion in the method by which the judge addressed the issue in light of her conclusion.  The court continues to have supervisory authority over the case.  The judge ordered DCF to file a status report, and within that report the department indicated that it had, among other things, changed the plan for the child from adoption to reunification (on the propriety of which, of course we express no opinion).  Should the mother or the father conclude that reasonable efforts toward reunification are not being made, either one of them may at any time bring a motion before the

17

court.

The judgment is affirmed.

So ordered.

By the Court (Rubin, Shin &
  Singh, JJ.[2]),

Clerk

Entered:  May 20, 2026.

---

[2] The panelists are listed in order of seniority.